HENDERSON *v.* MARYLAND NATIONAL BANK

[No. 32, September Term, 1976.]

*Decided November 26, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, LEVINE and ELDRIDGE, JJ.

*D. Warren Donohue*, with whom were *Trimm, Donohue, McDonald, Willis & McGuckian* on the brief, for appellant.

*James P. Salmon*, with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

The single question presented here is whether appellant was entitled to recover punitive damages in an action for conversion stemming from the wrongful repossession of his automobile. In the Circuit Court for Prince George's County, the trial judge (Powers, C. J.) ruled that there was sufficient evidence to submit the punitive damage issue to the jury, which returned a verdict of $5,000. The Court of Special Appeals reversed in an unreported opinion, *Maryland National Bank v. Ernest Henderson, Jr.*, [No. 407, September Term, 1975, decided March 17, 1976], holding there was insufficient evidence of actual malice to support the claim for punitive damages. We then granted certiorari, and since we are of the opinion that the question was properly submitted to the jury, we shall reverse.

After appellant, then a 29-year old construction superintendent residing in Jefferson, Maryland, purchased a new automobile in March 1971, the conditional sales agreement which he had executed was assigned to Maryland National Bank. Under the terms of his loan, he was required to make 36 monthly payments of $115.86 with the final installment to be paid on March 25, 1974. In November 1973, appellant, who had been making each of these monthly payments in timely fashion, received a delinquency notice from the bank. Dismissing the notice as the result of a clerical error, he ignored it only to receive another in several days. Upon verifying from his own records that his payments were in fact current, he "called the bank in Baltimore," which simply advised him that "there had been a mistake" and to "disregard the late notice." Several days later he received a third notice and called the bank again, this time informing a bank employee that he had cancelled checks for all payments. Later that day, the employee called and acknowledged that the notice was the result of an error caused by the fact that the bank had a loan account with another Ernest Henderson.

On January 9, 1974, appellant, who had since moved to Alexandria, Virginia, elected to pay the note in full and forwarded his check in the sum of $347.58, representing the final three months' installments. When the month of May arrived, appellant called the Baltimore office of Maryland National to inquire why he had not received the title to his automobile. Because that call proved futile, appellant's wife telephoned the bank several days later to complain about the bank's failure to mail the title. She was then advised that her husband owed " 'one more payment and a late charge of $20.' " After protesting that this was impossible, her call was transferred to another bank employee who repeated the delinquency allegation, claiming that the March payment, which would have been the final installment, was overdue. He requested that she send a copy of the check evidencing the March payment. After a delay occasioned by the Henderson family's vacation and a breakdown in the

photocopying machine at their own bank, appellant's wife mailed copies of the necessary cancelled checks.

A few days later, Mrs. Henderson called the same employee who had requested the check, but he denied receiving the copies which she had forwarded. Several days later another bank employee called to say that he had replaced the employee with whom appellant's wife had been dealing. Denying receipt of the check copies, he insisted that the Hendersons bring their records to him at appellee's "Consumer Banking Center" in College Park. Appellant then took the phone and became embroiled in an exchange with the employee, who again stated that if appellant wanted his title, he would be required " 'to bring everything down to our office and prove it to us.' " Appellant apparently responded with some well chosen expletives and hung up the phone.

A supervising employee called minutes later and reiterated to Mrs. Henderson that the final installment of $115.86 remained due. She replied that the account was paid in full, repeated her refusal to bring the records to the bank office and angrily hung up the phone. With that, the supervising employee "check[ed] the jacket for the proper documents before taking other action" and then, without any notice to appellant and without inquiring of the other employees to whom the Hendersons had spoken, instructed a firm in Laurel to repossess the automobile. That action was taken several days later at 4:30 a.m. when the Hendersons and their young sons were awakened by the noise of the tow truck removing their automobile. After calling the Alexandria police department to report the car stolen, appellant was informed that it had been repossessed. Later that day, the Hendersons' attorney, in possession of their cancelled checks, succeeded in convincing the bank that there had been no delinquency and obtained release of the automobile.

After regaining possession of his automobile, appellant filed suit against Maryland National in which he sought compensatory damages for breach of contract, conversion and slander, as well as punitive damages. The slander count was removed from the case by a directed verdict, and the

bank conceded its liability for compensatory damages on the contract and conversion claims. These were grounded on damage caused to the automobile by the repossession and the attorney's fees incurred in obtaining its return.

Evidence at the trial revealed that a series of bank blunders had eventuated in the repossession. They apparently were triggered by the fact that the other Ernest Henderson was not nearly as prompt in his monthly payments as was appellant. One of his monthly checks in the sum of $124.61 was returned for insufficient funds. Instead of charging the other Henderson account, however, Maryland National debited appellant's record in the amount of $115.86 and accounted for the discrepancy of $8.75 by arbitrarily labeling it a late charge payment. This mistake, bank witnesses testified, resulted from the fact that the other Ernest Henderson's name had been negligently omitted from the bank's alphabetical listing.

The series of errors committed by the bank caused its records to reflect a one-month discrepancy in appellant's account, which was never corrected despite his many protests. The explanations offered at the trial for these failures was that nothing in appellant's file indicated the existence of the other Ernest Henderson. The root of the problem, however, was promptly discovered when appellant's attorney, following the repossession, asserted that the account had been paid in full. At that point, the same employee who had ordered the repossession, confronted by this assertion and a threatened lawsuit, "took everything out of [appellant's] jacket to check and see if there had been something that was overlooked and at that point . . . found the [returned] check stuffed and folded in the bottom of the jacket for $124 under [the other] Henderson."

The Court of Special Appeals rested its decision on appellant's concession, which he renews in this Court, that since the conversion of his automobile was a tort arising out of a contractual relationship, to recover punitive damages he was required by our recent holding in *H & R Block, Inc. v. Testerman*, 275 Md. 36, 44-45, 338 A. 2d 48 (1975), to prove

actual malice. Since he had failed to meet that test, the court held, he was precluded from obtaining such an award. Appellant argues in this Court that there was evidence from which the jury could have found actual malice. Maryland National, of course, takes a contrary view, but we think appellant has the better of the argument.

We held in *McClung-Logan v. Thomas,* 226 Md. 136, 148, 172 A. 2d 494 (1961), that punitive damages may be allowed in an action for conversion. *Accord, Siegman v. Equitable Trust Co.,* 267 Md. 309, 314-15, 297 A. 2d 758 (1972); *see Food Fair Stores v. Hevey,* 275 Md. 50, 54-55, 338 A. 2d 43 (1975). But, as recognized by both parties and by the Court of Special Appeals, where, as in this case, the tort arises out of a contractual relationship, punitive damages are recoverable only upon a showing of actual malice. *Food Fair Stores v. Hevey, supra,* 275 Md. at 54; *H & R Block, Inc. v. Testerman, supra,* 275 Md. at 44-45. This rule manifestly inheres in the affinity between such torts and actions for pure breach of contract.[1] Following the weight of authority, *see St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 236, 278 A. 2d 12, *cert. denied,* 404 U.S. 857 (1971), and the authorities there cited, we have held that punitive damages are not recoverable in an action for pure breach of contract. *Food Fair Stores v. Hevey, supra,* 275 Md. at 57.

In *Drug Fair v. Smith,* 263 Md. 341, 352, 283 A. 2d 392 (1971), we said that actual malice "may be characterized as the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Accord, Food Fair Stores v. Hevey, supra,* 275 Md. at 55; *H & R Block, Inc. v. Testerman, supra,* 275 Md. at 43-44; *Siegman v. Equitable Trust Co., supra,* 267 Md. at 314. In stipulating that it was guilty of conversion, Maryland National has effectively conceded that it acted intentionally and without

---

1. In H & R Block, Inc. v. Testerman, 275 Md. 36, 338 A. 2d 48 (1975), as in this case, the plaintiff relied on breach of contract as an alternative cause of action. Indeed, here the defendant actually conceded that its conduct constituted both a conversion and a breach of contract.

legal justification; in any event, it does not contest the proposition.

It is therefore the motive for the repossession that becomes determinative of the question whether there was actual malice here. Appellant points to no direct evidence of an evil motive, nor, as Maryland National concedes, is he required to produce such proof to establish actual malice. Although utterances reflecting personal animosity may well be the most direct proof of actual malice, *see, e.g., Damazo v. Wahby,* 259 Md. 627, 639, 270 A. 2d 814 (1970); *Rinaldi v. Tana,* 252 Md. 544, 250 A. 2d 533 (1969), we have never held them to be the exclusive means by which that requirement may be met. In the commercial sphere, at least, where an impersonal relationship is more likely to prevail, such emotions as anger or spite are not always vented in a direct manner, and not infrequently find their expression in the facts and circumstances surrounding the tortious conduct. "Malice, fraud, deceit and wrongful motive are oftenest inferred from acts and circumstantial evidence. They are seldom admitted and need not be proved by direct evidence." *McClung-Logan v. Thomas, supra,* 226 Md. at 148 (citations omitted). Our inquiry, then, narrows to the question whether appellant presented such facts as would permit the jury to infer that Maryland National acted with actual malice, that is, whether there was sufficient circumstantial evidence of actual malice to warrant submission of the issue to the jury.

In holding that appellant had failed to produce sufficient evidence of actual malice, the Court of Special Appeals recognized that direct proof was not essential, but nevertheless found the required inferences lacking. To sustain that holding, appellee relies heavily on *C. & P. Tel. Co. v. Hicks,* 25 Md. App. 503, 524-25, 337 A. 2d 744 (1975). This reliance is clearly misplaced. It assumes that the testimony by appellee's employee, to the effect that repossession resulted from unintended errors, precluded the jury from inferring actual malice on his part. *Hicks* involved a negligence claim which the plaintiff there sought to establish by relying on the doctrine of *res ipsa loquitur.* In

that context, the court addressed itself to the question whether the plaintiff, in his own case-in-chief, had presented evidence from which it could be properly inferred that the defendant was more likely negligent than not. The court held that the plaintiff had failed to meet this test and that therefore the trial court should have directed a verdict against him.

The principle which the court dealt with in *Hicks* is by no means limited to cases involving the doctrine of *res ipsa loquitur*, and is frequently applied in cases of circumstantial evidence. As we said in *Short v. Wells*, 249 Md. 491, 496, 240 A. 2d 224 (1968), not a case of *res ipsa loquitur* but cited with approval in *Hicks*, where the plaintiff presents circumstantial evidence of negligence, but in his own case also introduces evidence of non-negligence or of an independent intervening cause, "a verdict must be directed against him because the jury is left to speculate as to which inference to draw." Where, however, the facts presented by the plaintiff permit reasonable and probable inferences of negligence, such evidence may be sufficient to overcome direct testimony of non-negligence presented by the defendant. In those circumstances, the issue must be resolved by the jury. There is no requirement that to justify the inferences sought, the circumstances presented by the plaintiff "negate every other positive or possible conclusion." *Board v. Dorcus*, 247 Md. 251, 259, 230 A. 2d 656 (1967); *Pearson v. Wiltrout*, 17 Md. App. 497, 502-503, 302 A. 2d 678 (1973); *see Antonelli v. Pugh*, 231 Md. 194, 198, 189 A. 2d 653 (1963). Thus, in accord with a majority of other jurisdictions,[2] we have rejected in civil cases a rule·

2. *See, e.g.*, Musgrave v. Union Carbide Corp., 493 F. 2d 224, 227-28 (7th Cir. 1974); Ford Motor Co. v. Mondragon. 271 F. 2d 342. 345 (8th Cir. 1959); Lee v. Ashizawa, 60 Cal. 2d 862, 389 P. 2d 535, 536, 37 Cal. Rptr. 71 (1964); Console v. Nickou, 156 Conn. 268, 240 A. 2d 895, 898 (1968); Shepherd v. Finer Foods, Inc., 165 So. 2d 750, 753 (Fla. 1964); Dent v. Hardware Mutual Casualty Co., 86 Idaho 427, 388 P. 2d 89, 93 (1963); Hocker v. O'Klock, 16 Ill. 2d 414, 158 N.E.2d 7, 10 (1959); State v. Williams, 179 N.W.2d 756, 760 (Iowa 1970); Farmers Ins. Co. v. Smith, 219 Kan. 680, 549 P. 2d 1026, 1033 (1976); Kelly v. Walgreen Drug Stores, 293 Ky. 691, 170 S.W.2d 34, 37 (1943); Vonner v. State Dep't of Pub. Welfare, 273 So. 2d 252, 255 (La. 1973); Cox v. Metropolitan Life Ins. Co., 139 Me. 167, 28 A. 2d 143, 145 (1942); Arens v. Minneapolis-Moline, Inc., 298 Minn. 521, 213 N.W.2d 336, 338 (1973);

analogous to that set forth in several criminal cases, that when guilt is based solely upon circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence. *Brown v. State*, 222 Md. 290, 296, 159 A. 2d 844 (1960); *Vincent v. State*, 220 Md. 232, 237, 151 A. 2d 898 (1959); *accord, Shelton v. State*, 198 Md. 405, 411-12, 84 A. 2d 76 (1951); *but see Metz v. State*, 9 Md. App. 15, 20-23, 262 A. 2d 331 (1970).

It is at once apparent that appellee misconceives the rule applicable to circumstantial evidence. This is brought home by the heavy emphasis which it places on the testimony, produced during its own case-in-chief, of the employee who initiated the repossession. It argues, in effect, that such circumstantial evidence of actual malice as appellant may have offered was overcome by the direct testimony of the bank employee to the contrary, and that therefore the issue should not have been submitted to the jury. But as we have seen, however direct and positive that employee's testimony may have been in negating actual malice, it could not preclude submission of that issue to the jury if the circumstantial evidence presented by appellant in his case-in-chief permitted a reasonable and probable inference of actual malice to be drawn. We think that such an inference was justified, particularly when we observe the cardinal rule that in the posture of this case, the testimony and all logical and reasonable inferences deducible therefrom must be viewed in the light most favorable to appellant.

Without undertaking a repetitious summary of the relevant facts, we conclude that the evidence presented by appellant permitted a reasonable and probable inference that the bank employee was motivated by actual malice in the form of spite or ill will when he directed the repossession of the automobile. The employee's generalized claim, related

Jochim v. Montrose Chem. Co., 3 N. J. 5, 68 A. 2d 628, 629 (1949); Pennsylvania Glass Sand Corp. v. Ozment, 434 P. 2d 893, 897-98 (Okla. 1967; punitive damages allowed); Floyd v. Town of Lake City, 231 S. C. 516, 99 S.E.2d 181, 186 (1957); Weidner v. Lineback, 82 S. D. 8, 140 N.W.2d 597, 601 (1966).

by appellant's attorney, that the repossession was ordered because of appellant's failure to make the payment rose no higher than a mere scintilla and is hardly sufficient to overcome the inference. The inference of actual malice arises under the particular facts of this case even if the employee believed a single payment to be due.

According to the testimony presented by appellant, the Hendersons' final telephone conversation with a bank employee would have revealed the history of appellant's travails, including his contacts with other employees whom he identified. In addition, the employee knew that the Hendersons claimed to have mailed the photocopy of the cancelled check as requested and that they were persisting vehemently in their assertion that they had made full payment. The final conversation ended abruptly when the employee asked, " 'Are you going to bring your records down here and prove you paid for your car?' " Mrs. Henderson flatly refused and hung up the phone. With that, the car was summarily repossessed. No effort was made to contact the other employees, nor was any warning given the Hendersons.

Under all the circumstances reflected by appellant's evidence, a reasonable and probable inference arose that the purpose of the repossession was not, as argued by appellee, to obtain payment on behalf of the bank. *Cf. Siegman v, Equitable Trust Co., supra,* 267 Md. at 316. Instead, an inference arose that the employee, provoked at appellant's angry refusal to bring the records from Alexandria to College Park, repossessed the car to force production of the records or, far worse, to punish him for his refusal. We think this was sufficient to take the issue of actual malice to the jury despite the direct disavowals presented in appellee's case.

> *Judgment of the Court of Special Appeals reversed; remanded to that Court with instructions to affirm the judgment of the Circuit Court for Prince George's County; appellee to pay costs.*