Manuel E. NUNES and Dr. Leroy D. Kane

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. and Philip C. Poston and Nancy M. Beckwith.

Civ. A. No. M–84–3118.

United States District Court, D. Maryland.

April 2, 1985.

Charles Bagley, IV and Council, Baradel, Kosmerl & Nolan, P.A., Annapolis, Md., for plaintiffs.

David F. Albright, G. Randall Whittenberger and Semmes, Bowen and Semmes, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Plaintiffs sue defendants in this civil action alleging various causes of action arising out of defendants' handling of plaintiffs' securities accounts (Paper No. 1). Plaintiffs allege violations of § 17(a) of the Securities Act of 1933, as amended, 15 U.S.C. § 77q(a); and §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5 promulgated thereunder, 17 CFR 240.10b–5; violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.;* violations of the Maryland Securities Act, *Md. Corp. and Assn. Code Ann.* § 11–703; and common law claims of fraud, breach of fiduciary duty, negligence, and breach of contract.

Defendants have filed a motion pursuant to Rules 12 and 56 (Paper No. 3). Plaintiffs have filed an opposition (Paper No. 5), to which defendants have filed a reply (Paper No. 6). In addition, defendants have filed a supplemental memorandum (Paper No. 7), to which plaintiffs have filed an opposing memorandum (Paper No. 8). After reviewing the memoranda submitted by the parties, the court concludes that no hearing is necessary to decide the motion. Local Rule 6(E).

### I. *Background*

Manuel E. Nunes alleges that in 1981 he opened a cash management account with Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch) (Paper No. 1, ¶ 13). He alleges that he became concerned with the poor condition of his account in June 1982, and turned to defendant Philip C. Poston, then an employee of Merrill Lynch, who in turn sent Nunes to defendant Nancy M.

Beckwith, also a Merrill Lynch employee (*id.*, ¶¶ 14–15). Nunes alleges that Poston and Beckwith represented that they would look after his account and make sure that he did not make any unwise trades (*id.*, ¶ 15). Nevertheless, Nunes alleges, he continued to be faced with recurring maintenance margin calls which required him either to deposit additional funds or to transact additional securities option trades to prevent his account from being closed (*id.*, ¶ 16). Nunes, allegedly relying on Poston's advice, continued to authorize Poston to sell options on securities in order to generate cash to meet margin calls (*id.*). Nunes further alleges that at no time did Poston ever discourage Nunes from making a particular trade (*id.*).

Nunes alleges that during this time period the defendants induced transactions in securities and securities options in his account which were excessive and which generated $51,724.00 in commission expense and incurred $17,371.00 in margin expense for Nunes (*id.*, ¶ 17). Nunes alleges that the defendants, without authority, assumed *de facto* control over his account and engaged in excessive and unwarranted trading in and churning of his account for the purpose of generating commissions and fees for themselves, in total disregard of the needs and objectives of Nunes (*id.*, ¶ 19).

Kane alleges that he opened up a cash account with Merrill Lynch on or about September 25, 1982, which remained open until June 1983 (*id.*, ¶ 56). Kane alleges that, due to his close relationship with Nunes, he executed a power of attorney to Nunes under which Nunes had authority to make transactions in Kane's account (*id.*, ¶ 57), and that Kane's account was therefore subjected to the same problems as Nunes' (*id.*).

Kane further alleges that sometime between October 30, 1982 and November 26, 1982, his account was changed from a cash account to a margin account without his prior knowledge or permission, and that in January 1983, it was changed to a cash management account, at which time he began receiving increased requests for monies from Poston to meet maintenance costs (*id.*, ¶¶ 58, 59). Kane alleges that during the time when he had an account with Merrill Lynch, defendants, having assumed *de facto* control over his account, induced excessive transactions which generated $8,222.00 in commission expense and incurred $1,439.00 in margin expense (*id.*, ¶ 62). Kane alleges that, as a result of defendants' actions, he has suffered a diminution in the value of his total investment account of approximately $16,000.00 (*id.*, ¶ 66).

Nunes seeks compensatory damages of $69,000.00, consisting of commissions paid, margin expense, and other fees, while Kane requests compensatory damages of $16,000.00, consisting of the diminution in total value of his investment account. Both plaintiffs also request prejudgment interest, punitive damages of $1,000,000.00 each, and treble damages for all damages awarded to them under their RICO claims, pursuant to 18 U.S.C. § 1964(c).

## II. *Punitive Damages* [1]

### A. *Section 28(a) of the Securities Exchange Act*

Defendants assert that neither federal nor state law permits recovery of punitive damages on the facts alleged in the complaint. First, defendants claim that § 28(a) of the Securities Exchange Act, 15 U.S.C. § 78bb(a) [2], limits the damages available in

---

1. Although defendants have entitled this part of their motion as one for summary judgment, a reading of the motion shows that it asserts that plaintiffs have failed to state a claim with respect to the claim for punitive damages. Furthermore, neither party has submitted matters outside the pleadings for consideration by the court. The court shall therefore treat it as a motion to dismiss.

2. Section 28(a) states in relevant part:
 "(a) The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual

this case, on both the federal and the pendent claims, to the actual damages suffered by the plaintiffs.

█ Punitive damages are not recoverable on the federal securities claims.[3] *See, e.g., Carras v. Burns,* 516 F.2d 251, 259 (4th Cir.1975); *Baumel v. Rosen,* 412 F.2d 571, 576 (4th Cir.1969).

The issue of the availability of punitive damages on pendent claims attached to federal securities claims was raised in this district in *Goodman v. Poland,* 395 F.Supp. 660 (D.Md.1975), where Judge Northrop stated:

"Thus, the general rule today appears to be that while punitive damages are not recoverable in an action solely under Rule 10b–5, *see deHaas v. Empire Petroleum Co.,* 435 F.2d 1223, 1229–32 (10th Cir.1970), *Baumel v. Rosen, supra,* 412 F.2d at 576 (*dictum,*) *Green v. Wolf Corp.,* 406 F.2d 291, 302–03 (2nd Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), they may be awarded, if allowable under state law, when a state law violation is joined with the Rule 10b–5 claim. *Flaks v. Koegel,* 504 F.2d 702, 706–07 (2nd Cir.1974); *Coffee v. Permian Corp.,* 474 F.2d 1040, 1044 45 (5th Cir.), *cert. denied,* 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146 (1973); *Young v. Taylor,* 466 F.2d 1329, 1337–38 (10th Cir.1972); *Burkhart v. Allson Realty Trust, supra,* 363 F.Supp. [1286] at 1290–92 [N.D.Ill.(1973) ]; *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 393–94 (S.D.N.Y.1973); *Gann v. Bernzomatic Corp.,* 262 F.Supp. 301, 304 (S.D.N.Y.1966)."

395 F.Supp. at 686. Defendants assert, however, that the holding in *Goodman* should be reassessed, stating:

"The problems with *Goodman* are that (1) it fails to follow the spirit of the Fourth Circuit decisions, *Carras* and *Baumel,* which limit a plaintiff's recovery to actual damages in securities cases, (2) it fails to follow the explicit language of § 28(a), and (3) its rationale, based on 'the general rule today,' in 1975 could not possibly have forseen the great impact the many yet to be written Supreme Court cases would have on the course of statutory construction of the securities laws."

(Paper No. 6 at 4–5).

Judge Northrop in *Goodman* did acknowledge the decisions in both *Carras* and *Baumel,* but apparently determined, correctly in this court's view, that neither of those cases was controlling on the issue. In *Baumel,* although the plaintiff had also pleaded common law fraud and deceit, the Fourth Circuit panel did not address that claim because no decision was made on it below. 412 F.2d at 572. Similarly, in *Carras,* the court intentionally left this issue open, stating that it was unnecessary for the court to decide it since the jury in that case had found that the defendants lacked the intent to defraud necessary to support a claim for punitive damages under the applicable state law. 516 F.2d at 260.

There is no merit to defendants' claim that the holding in *Goodman* fails to follow the explicit language of § 28(a). Defendants have cited no authority supporting its assertion that the explicit language of § 28(a) prohibits recovery of punitive damages under pendent claims, and this court is aware of none. Courts have generally found that the statute and its legislative history are capable of alternate interpretations. *See, e.g., deHaas v. Empire Petroleum Co.,* 435 F.2d 1223, 1230 (10th Cir. 1970); *Gilbert v. Bagley,* 492 F.Supp. 714, 742–43 (M.D.N.C.1980). This court is in agreement.

█ While § 28(a) states that "no person permitted to maintain a suit for damages under the provisions of this chapter shall

---

damages on account of the act complained of."

**3.** As plaintiffs' damage claim is located at the end of their 20 count complaint, it could be construed as requesting punitive damages under any or all of its counts, including the federal securities claims. In their opposition to defendants' motion, however, plaintiffs indicate that they seek punitive damages only under their pendent state claim.

recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of," it also provides that its rights and remedies are "in addition to any and all other remedies that may exist at law or in equity...." This section is capable of being interpreted as defendants request, *i.e.*, that anyone *permitted* to maintain an action under the Securities Exchange Act is limited to recovery of actual damages on either securities or pendent claims. It is more likely, however, that Congress intended, in reserving common law remedies, to reserve the common law measure of damages as well and to limit recovery to actual damages only with regard to claims under the securities laws. In *Goodman,* Judge Northrop found this latter position to be the general rule, and subsequent decisions have agreed. *See, e.g., Miley v. Oppenheimer & Co.,* 637 F.2d 318, 329–31 (5th Cir.1981); *Nye v. Blyth Eastman Dillon & Co.,* 588 F.2d 1189, 1200 (8th Cir.1978); *Faller Group, Inc. v. Jaffe,* 564 F.Supp. 1177, 1185–86 (S.D.N.Y. 1983); *Kirkland v. E.F. Hutton and Co.,* 564 F.Supp. 427, 446 (E.D.Mich.1983); *Emmons v. Merrill Lynch, Pierce, Fenner & Smith,* 532 F.Supp. 480, 485 (S.D.Ohio 1982); *Darling & Co. v. Klouman,* 87 F.R.D. 756, 759 (N.D.Ill.1980); *Stowell v. Ted S. Finkel Inv. Services, Inc.,* 489 F.Supp. 1209, 1215–16 (S.D.Fla.1980); *Hall v. Security Planning Services, Inc.,* 462 F.Supp. 1058, 1064–65 (D.Ariz.1978); *Holmes v. Bateson,* 434 F.Supp. 1365, 1389 (D.R.I.1977).

Finally, defendants assert that Judge Northrop, in stating the general rule in *Goodman,* could not have foreseen the impact that subsequent Supreme Court cases would have, in support of which defendants cite *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1978); *Piper v. Chris-Craft Industries,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); and *Ernst & Ernst v.*

*Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). These cases, however, do not address the issue in the present case, and no inconsistency exists between their holdings and the holding in *Goodman.* Section 28(a) expressly reserves common law remedies, and it would require a strained interpretation to find that it does not also preserve the common law measure of damages for pendent claims. Furthermore, despite these cases, the general rule, as noted above, has not changed, and courts ordinarily permit punitive damages to be recovered on pendent claims filed with federal securities claims. Accordingly, there is no merit to defendants' argument that § 28(a) requires this court to find that punitive damages are not recoverable on the pendent claims involved in this case.

In their supplemental memorandum, defendants state two additional reasons why they feel that plaintiffs' punitive damage claim should be dismissed. First, defendants contend that plaintiffs' state common law claims for punitive damages are preempted by federal securities laws. This argument is without merit. This court has already concluded that the claim for punitive damages does not conflict with the provisions of § 28(a), in light of § 28(a)'s express reservation of other available rights and remedies.

Defendants also contend that plaintiffs' state claim for punitive damages is an unconstitutional burden on interstate commerce. Defendants first base this assertion on their claim that such an award directly burdens interstate commerce because it directly conflicts with § 28(a). As this court has found that such a conflict does not exist, this argument is without merit.

■ Defendants also assert that an award of punitive damages under state law indirectly burdens interstate commerce, because the states' legitimate interest in protecting their citizens against fraudulent securities practices is outweighed by the burden imposed on Congress' power and interest in protecting the free flow of securities

transactions through the channels of interstate commerce. The burden, if any, imposed on interstate commerce by Maryland's common law fraud remedy is minimal, however, and the state has a legitimate interest in protecting its citizens from fraud. Accordingly, the court finds that the statute is constitutional under the decision in *Edgar v. Mite Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), and the rule announced in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), that:

"Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."

397 U.S. at 142, 90 S.Ct. at 847.

### B. *Punitive Damages under Maryland Law*

Defendants also assert that plaintiffs have failed to allege adequately their claim for punitive damages under Maryland law, because they have not pleaded actual malice.

Punitive damages, while not recoverable in a pure breach of contract action, may be recovered for a tort committed in connection with a breach of contract. *H & R Block, Inc. v. Testerman*, 275 Md. 36, 44, 338 A.2d 48 (1975). Where recovery of punitive damages is based on a tort arising out of a contractual relationship, however, the plaintiff must prove actual malice. *General Motors Corp. v. Piskor*, 281 Md. 627, 634, 381 A.2d 16 (1977); *Henderson v. Maryland National Bank*, 278 Md. 514, 519, 366 A.2d 1 (1976); *H & R Block, Inc. v. Testerman*, 275 Md. at 44–46, 338 A.2d 48. Actual malice has been defined as "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *H & R Block, Inc. v. Testerman*, 275 Md. at 43, 338 A.2d 48. When a defendant's object is merely to

benefit itself, although the plaintiff might coincidentally be injured, there are no grounds to support an award of punitive damages. *H & R Block, Inc. v. Testerman*, 275 Md. at 48, 338 A.2d 48; *St. Paul at Chase v. Mfrs. Life Insurance Co.*, 262 Md. 192, 238, 278 A.2d 12 (1971); *Knickerbocker Co. v. Gardiner Co.*, 107 Md. 556, 569–70, 69 A. 405 (1908).

Defendants assert that none of the facts pleaded in the complaint describe acts of actual malice and that, therefore, the defendants should be granted summary judgment on the claim for punitive damages. Plaintiffs, however, contend that since evil motive may be proven by circumstantial evidence, *Henderson v. Maryland National Bank*, 278 Md. at 520, 366 A.2d 1, the motion should be denied. In *Goodman v. Poland*, 395 F.Supp. 660, Judge Northrop found that the plaintiffs there had alleged sufficient facts to withstand a motion to dismiss and stated that "at the present stage of the proceedings it would be inappropriate to comment as to whether plaintiffs can make a sufficient showing to justify an award of punitive damages under the facts of this case." 395 F.Supp. at 687.

As this court is treating the motions as a motion to dismiss, the "complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *Chertkof v. Mayor & City Council of Baltimore*, 497 F.Supp. 1252, 1258 (D.Md.1980).

The complaint alleges, *inter alia*, that defendants engaged in improper conduct by engaging in options transactions which were not suitable for plaintiffs' investment objectives and by engaging in excessive and unauthorized trading (Paper No. 1, ¶ 7). It further alleges that such actions were engaged in willfully (*id.*, ¶¶ 27, 72). If plaintiffs are able to prove that defendants, in pursuing the alleged

courses of action, were attempting deliberately and willfully to injure the plaintiffs, then actual malice would exist and plaintiffs could be entitled to punitive damages. At this stage of the proceedings, the court cannot say that plaintiffs can prove no set of facts which would entitle them to relief. Therefore, the motion must be denied.

### III. Private Right of Action under Private Exchange Rules

■ Defendants assert that Counts VI, VII, XI, XVI, and XVII should be dismissed to the extent that they are based on alleged violations of the Rules of the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., the American Stock Exchange, Inc., and the Chicago Board Options Exchange, Inc.

The general rule in this circuit is that there is no private right of action for a violations of such rules. *See, e.g., Carras v. Burns,* 516 F.2d 251, 260 (4th Cir.1975); *Chapman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 99, 419 (D.Md.1983); *Rizika v. Merrill Lynch, Pierce, Fenner & Smith,* Fed.Sec. L.Rep. (CCH) ¶ 97, 934 (D.Md.1981); *Kaufman v. Merrill Lynch, Pierce, Fenner & Smith,* 464 F.Supp. 528 (D.Md.1978); *Parsons v. Hornblower & Weeks-Hemphill, Noyes,* 447 F.Supp. 482 (M.D.N.C.1977), *aff'd per curiam,* 571 F.2d 203 (4th Cir. 1978).

Plaintiffs do not contest defendants' assertion that no private right of action exists under those rules, but assert that references to the rules were made to show the existence of a standard of care and duty owed by defendants to plaintiffs. Defendants respond that the legal standards of care for violations of specific statutes or common law are based on the enactments of Congress and the Maryland legislature, or the common law decisions of the Maryland courts, not by rules drafted by private businessmen to govern their private stock exchanges.

Because it is clear that no private right of action exists under such rules, the motion to dismiss will be granted to the extent

such a cause of action is alleged. As the counts in question appear adequately to allege otherwise proper causes of action for negligence and securities fraud, the underlying claims will not be dismissed. With respect to defendants' assertion that the applicable standard of care is not governed by the rules, this is an evidentiary issue not properly resolved on a motion to dismiss. Therefore, the court need not decide that issue at this time.

### IV. Private Right of Action under § 17(a) of the Securities Act of 1933

■ Defendants next assert that Counts I, II, XI and XX of the complaint should be dismissed to the extent that they are based on a private right of action under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

In *Newman v. Prior,* 518 F.2d 97, 99 (4th Cir.1975), the Fourth Circuit clearly held:

"Although there is authority to the contrary, this circuit is committed to the rule that § 17(a) supports a private damage claim for the fraudulent sale of a security. *Johns Hopkins University v. Hutton,* 488 F.2d 912 (4th Cir.1973); *cf. J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). *See generally* 6 Loss, Securities Regulation 3913 (1969)."

Defendants assert that the current validity of this holding is questionable. First, defendants point to dicta in *SEC v. American Realty Trust,* 586 F.2d 1001, 1006 (4th Cir. 1978), where the Fourth Circuit stated, in a case where the SEC brought an action for injunctive relief:

"The question is not now before us in this suit by the Commission, but to hold that § 17(a)(2) creates a private right of action would probably require some substantial disregard of the whole legislative scheme."

Second, defendants assert that *Newman* was decided prior to the Supreme Court's issuance of a number of cases setting out strict rules of statutory construction to be applied before finding an implied private

right of action, citing *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Piper v. Chris-Craft Industries*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Touche Ross v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); and *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

The Supreme Court has not yet ruled on whether § 17(a) of the 1933 Act creates a private right of action.[4] The courts which have considered the issue, however, are split. *Compare Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981) (finding an implied private right of action); *Lincoln National Bank v. Herber*, 604 F.2d 1038, 1040 n. 2 (7th Cir.1979) (same); *Kirshner v. United States*, 603 F.2d 234, 241 (2nd Cir.1978), *cert. denied sub nom., Goldberg v. Kirshner*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979) (same), with *Landry v. All American Assurance Co.*, 688 F.2d 381 (5th Cir.1982) (finding no implied private right of action); *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152, 159 (8th Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (same); *Citizens State Bank v. Continental Assurance Co.*, 598 F.Supp. 1111, 1115 (W.D.Wisc.1984) (same); *Xaphes v. Merrill Lynch, Pierce, Fenner & Smith*, 597 F.Supp. 213, 217 (D.Maine 1984) (same); *Bruns v. Ledbetter*, 583 F.Supp. 1050 (S.D. Cal.1984) (same); *Kimmel v. Peterson*, 565 F.Supp. 476, 482–88 (E.D.Pa.1983) (same).

Still other courts have stated that "it is not a terribly important question," because § 17(a) is so similar to Rule 10b–5, under which a private right of action is well established. *Peoria Union Stock Yards Co. v. Penn Mutual Life Insurance Co.*, 698 F.2d 320, 323 (7th Cir.1983); *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466 (N.D.Ill.1985).

There does appear to be a trend to deny a private right of action among recent cases which have examined the issue in light of the test for implying a private right of action set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 and its progeny. Nevertheless, this court is bound to follow the Fourth Circuit on this issue, as have other courts in this circuit. *See, e.g., Rocco v. Dusseau*, No. N–82–2848 (oral opinion issued Jan. 23, 1984); *Kaufman v. Merrill Lynch, Pierce, Fenner & Smith*, 464 F.Supp. 528, 537 (D.Md.1978); *Reid v. Madison*, 438 F.Supp. 332, 333 (E.D.Va.1977). Despite the dicta in *SEC v. American Realty Trust*, 586 F.2d at 1006, to the contrary, the holding in *Newman* that a private right of action exists under § 17(a) remains the law in this circuit. Accordingly, the motion to dismiss the claims based on § 17(a) must be denied.

## V. *RICO Counts*

In Counts IX, X, XIX, and XX of the Complaint, plaintiffs allege causes of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* Defendants assert that plaintiffs have failed to state a claim, particularly that plaintiffs have failed to plead the predicate acts constituting racketeering activity and that plaintiffs have failed to describe an enterprise separate and apart from Merrill Lynch.[5]

---

**4.** In several cases, the Court has expressly recognized that this is an open question. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *Aaron v. SEC*, 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980); *Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733–34 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975).

**5.** Although not specifically raised by the parties, the court recognizes that the holding in *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2nd Cir. 1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985), to the effect that the defendants in a civil RICO action must have been previously convicted of a RICO predicate offense, would act to bar this cause of action if followed by this court. After careful consideration of the applicable case law, and in light of

The civil remedies available under RICO are provided by 18 U.S.C. § 1964(c), which states that:

"(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

Section 1962(c) provides:

"(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

The definitions for the material terms contained in § 1962 are provided in § 1961 as follows:

"As used in this chapter—

(1) 'racketeering activity' means ... (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), ... or (D) any offense involving ... fraud in the sale of securities ...;

(3) 'person' includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (ex-cluding any period of imprisonment) after the commission of a prior act of racketeering activity; ...."

 The predicate offenses alleged by plaintiffs in this case include mail fraud, wire fraud, and federal securities fraud. Plaintiffs' complaint alleges that between October 1982 and June 1983, the defendants committed at least two of the predicate acts stated above. Under § 1961(5), a pattern of racketeering activity has been sufficiently established for purposes of a motion to dismiss if the plaintiff has alleged that defendants are guilty of two acts of racketeering activity. *See Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1063 (4th Cir.1984). As plaintiffs have alleged such acts, they have sufficiently alleged a pattern of racketeering activity and the predicate acts constituting racketeering activity.

Defendants contend, however, that plaintiffs have failed to describe an "enterprise" separate and apart from Merrill Lynch. Plaintiffs assert that they have sufficiently alleged that the defendants, Poston, Beckwith, and Merrill Lynch, have formed an "enterprise" by associating to offer and sell securities to plaintiffs.

 An "enterprise" under § 1961(4) must be an entity separate and apart from the pattern of racketeering activity in which it engages, and must be an entity whose members are "associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). *See also United States v. Griffin,* 660 F.2d 996, 999 (4th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982). An enterprise must have a "common or shared purpose," it must "function as a continuing unit," and it must have an " 'ascertainable structure' distinct from that inherent in the conduct of a pattern of racketeering activi-

---

the Fourth Circuit's recent decision in *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060 (4th Cir.1984), this court finds that it cannot follow *Sedima* for the reasons set forth by Judge Northrop in *Wang Laboratories, Inc. v. Burts,* Civil No. N–84–1977 (D.Md. Jan. 28, 1985), and by Magistrate Smalkin in *Heffron Co. v. Seafarers' Maryland Bldg. Corp.,* —— F.R.D. ——, Civil No. HAR–83–3274 (Feb. 27, 1985).

ty." *United States v. Bledsoe,* 674 F.2d 647, 665 (8th Cir.1982). Furthermore, the enterprise must "refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and, failing that, punish." *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982).

An enterprise, however, may include an association of individuals and corporations. *See United States v. Aimone,* 715 F.2d 822, 828 (3rd Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984); *United States v. Thevis,* 665 F.2d 616 (5th Cir.), *cert. denied sub nom., Evans v. United States,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).

Defendants assert that plaintiffs have not alleged an enterprise separate and distinct from Merrill Lynch. While plaintiffs concede that Merrill Lynch itself cannot be an "enterprise," they allege that there was an association in fact between Merrill Lynch and either Beckwith (count IX), Poston (counts XIX and XX), or both Beckwith and Poston (count X). The court is of the opinion that plaintiffs' allegation that these defendants associated to offer and sell securities properly alleges an "enterprise" under RICO. *See Austin v. Merrill Lynch, Pierce, Fenner & Smith,* 570 F.Supp. 667, 669 (W.D.Mich.1983). Therefore, this motion must be denied.

## VI. *Adequacy of Fraud Allegations Under Rule 9(b)*

Defendants contend that Counts I–IV and XI–XIV, in which plaintiffs allege fraud under the federal securities laws, Maryland securities laws, and common law, should be dismissed for failure to plead fraud with adequate particularity.

Allegations of fraud must comply with the pleading requirements set forth in Rule 9(b), Fed.R.Civ.P., which states:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

Rule 9(b) must be read in conjunction with the requirement of Rule 8(a), Fed.R.Civ.P., that the complaint consist of "a short and plain statement of the claim" for relief. *Windsor Associates, Inc. v. Greenfeld,* 564 F.Supp. 273, 280 (D.Md.1983). Furthermore, " 'the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare an adverse pleading.' " *Windsor Associates, Inc. v. Greenfeld,* 564 F.Supp. at 280 (quoting C. Wright and A. Miller, *Federal Practice and Procedure,* § 1297, p. 415 (1969) ).

In the present case, the complaint explains the course of the relationship between plaintiffs and the party defendants and gives dates of relevant contacts. In addition, plaintiffs provide a monthly breakdown of the number of transactions involved, the commissions allegedly made by defendants on the transactions, the average equity of plaintiffs, the commission/equity ratio for the month, and the margin costs.

This case involves an alleged broker churning case, in which "a broker, exercising control over the volume and frequency of trading, abuses his customer's confidence for personal gain by initiating transactions that are excessive in view of the character of the account." *Carras v. Burns,* 516 F.2d 251, 258 (4th Cir.1975). Churning cases involve numerous transactions which take place over an extended period of time and generally involve disproportionate trading, frequent in and out transactions, and large brokerage commissions. Consequently, in a churning case "it serves no useful purpose to require the plaintiffs to list with particularity every transactions relevant to their claim." *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 541 (N.D.Ill.1981).

In light of these considerations, the court finds that the complaint in the present case alleges sufficiently specific facts to put defendants on notice of what plaintiffs allege they did, and that, therefore, the complaint

meets the pleading requirements of Rule 9(b). The motion to dismiss plaintiffs' fraud claims on this basis is denied.

Accordingly, it is this 2nd of April, 1985, by the United States District Court for the District of Maryland, ORDERED:

1) That the defendants' Motion Pursuant to Rule 12 and Rule 56 be, and the same is hereby, GRANTED in part and DENIED in part, as set forth in this Memorandum and Order.

2) That the Clerk mail a copy of this Memorandum and Order to counsel for the parties.