**Floyd B. RHOADES, Jr. and Audrey Rhoades, Plaintiffs,**

v.

**William T. POWELL, et al., Defendants.**

**No. CV–F–85–549 REC.**

United States District Court, E.D. California.

Sept. 5, 1986.

Timothy J. Buchanan, Dietrich, Glasrud & Jones, Fresno, Cal., for plaintiffs.

Marilyn Kaplan, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendant Merrill Lynch.

Steven Shahbazian, Fresno, Cal., for defendant William T. Powell.

J. Douglas MacArthur, Crossland, Crossland, Chambers & MacArthur, Fresno, Cal., for defendant Paine Webber and C. Jordan Ball.

## MEMORANDUM OF DECISION AND ORDER RE PETITION TO COMPEL ARBITRATION AND MOTION TO DISMISS

COYLE, District Judge.

Plaintiffs commenced this lawsuit in October 1985 naming as defendants William T. Powell, a stockbroker who handled plaintiffs' accounts at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and later at Paine Webber, Inc. ("Paine Webber"), the managing supervisors of the Merrill Lynch and Paine Webber offices at which Powell was employed, and against the brokerage firms themselves. Plaintiffs allege that defendants' operation of the successive accounts at Merrill Lynch and Paine Webber violated section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); sections 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78o(c); Rule 10b–5 promulgated by the Securities and Exchange Commission ("SEC"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The complaint also contains pendent state claims for common law fraud, negligent misrepresentation, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, rescission, and violation of California Corporations Code section 25401.

This matter is presently before the court on defendants' petition to compel arbitration and motion to dismiss. Following oral argument on May 12, 1986 the court placed the motions under submission. After due consideration of the written and oral arguments of the parties, the court grants the petition to compel arbitration in part and denies it in part. Because the court declines to stay the non-arbitrable claims, it also rules upon the motion to dismiss, granting the motion in part and denying it in part.

## PETITION TO COMPEL ARBITRATION

Defendants Merrill Lynch and Hollis D. Anderson ("Anderson") (collectively "Merrill Lynch") petition the court to compel arbitration of all plaintiff's claims against them. Merrill Lynch further moves that this action be stayed until such arbitration is completed. Defendants Paine, Webber and Jordan Ball (collectively "Paine Webber") have filed a separate petition to compel arbitration under a separate customer agreement, but join in Merrill Lynch's legal arguments. The remaining defendant, William T. Powell, joins in the other motions to compel arbitration.

### I.

In October 1982, plaintiffs opened a customer margin account with Merrill Lynch's office in Jackson, Mississippi. Defendant Powell was plaintiffs' account executive. Defendant Anderson was and is resident Vice President of Merrill Lynch's Jackson office.

Before opening their account with Merrill Lynch in October 1982, plaintiffs signed a written Customer Agreement. *See* Petition for Arbitration, Exhibit 1. Paragraph 11 of the agreement is an arbitration clause which reads:

It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. as the undersigned may elect.... Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal. In the event the undersigned does not make such designation within five (5) days of such demand or notice, then the undersigned authorizes you to do so on the behalf of the undersigned.

Plaintiffs moved from Mississippi to California in July 1983, and Powell left Merrill Lynch to work at Paine Webber. Plaintiffs then transferred their account to Paine Webber and executed a Client's Agreement, which contained the following arbitration clause:

15. Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the New York Stock Exchange, American Stock Exchange, National Association of Securities Dealers or where appropriate, Chicago Board Option Exchange of Commodities Futures Trading Commission, as I may elect. I authorize you if I do not make such election, by registered mail addressed to you at your main office within fifteen (15) days after receipt of notification from you requesting such election, to make such election in my behalf. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

*See* Petition for Order Compelling Arbitration, Exhibit A.

Defendants have requested that plaintiffs submit their disputes to arbitration as provided in these arbitration provisions. Because plaintiffs have refused to do so, Merrill Lynch and Paine Webber each petition the court to enforce the arbitration clauses.

## II.

Statutory authorization for the enforcement of arbitration clauses is found in section 2 of the Federal Arbitration Act, 9 U.S.C. section 2, which provides in part:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The Arbitration Act evinces a strong national policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Arbitration agreements are enforceable absent a basis for revocation of the contractual agreement or in cases involving certain specifically exempted federal claims. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

### A. *Pendent State Law Claims.*

Claims 6–10 are pendent state claims and arise out of the same basic facts upon which the federal securities violations are based. Defendants assert that these claims are subject to arbitration because they arise out of the customer agreements, an argument that plaintiffs do not dispute.

This issue is controlled by *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). There, a dentist sold his practice and invested the proceeds in securities through a broker-dealer. The value of the account declined substantially, and the investor filed a complaint against the broker-dealer for violations of federal securities laws and various state law provisions. The investor had signed an agreement to arbitrate any controversy arising out of the securities account, and accordingly, the broker/defendant filed a motion to sever the pendent state claims, to compel their arbitration, and to stay arbitration of those claims pending resolution of the federal court action. The district court denied the motion in its entirety and the Ninth Circuit affirmed.

The Supreme Court reversed, and held that

> [T]he Arbitration Act *requires* district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.

470 U.S. at 217, 105 S.Ct. at 1241, 84 L.Ed.2d at 163. (emphasis added). Thus, *Byrd* mandates this court to require arbitration of the pendent state claims, regardless of its disposition on the federal claims.

Plaintiffs offer no formal written opposition to arbitration of the state claims; indeed, they state that "as it pertains to plaintiffs pendent state claims under California law, the petition to compel arbitration likely should be granted." Plaintiffs' Opposition Memo, page 1. Plaintiffs then say that because the complaint contains federal claims that are not subject to arbitration, "the petitions to arbitration [sic] the federal claims must be denied." *Id.* Plaintiffs may be arguing by this cryptic passage that because the federal claims are non-arbitrable, the entire petition should be denied. That contention would be directly contrary to the holding in *Byrd.* More likely, plaintiffs are being equivocal on the

state claims and not conceding the federal claims.

Plaintiffs' attorney, Timothy Buchanan, explains his position somewhat in a letter dated April 30, 1986 and directed to Marilyn Kaplan, counsel for defendant Merrill Lynch. Paragraphs two and three of this letter read:

> Ms. Kaplan raised the legitimate point that plaintiffs' memorandum of points and authorities in opposition to the petition to compel arbitration equivocated on the arbitrability of the state claims, stating the claims 'likely' would be subject to arbitration. I apologize for this unclear language, but at the time felt an outright concession of the point was unwarranted because I was still examining various possible arguments on the issue at the time of the filing deadline for my opposition papers.
>
> I am prepared to argue at the May 12 hearing, however, that the arbitrability of the state claims is dependent upon Judge Coyle's ruling on the arbitrability of the federal claims. Specifically, as discussed in plaintiffs' opposition to the motion to dismiss, plaintiffs are seeking, among other things, rescission of the customer agreements under § 29 of the Securities Exchange Act of 1934. Rescission of the customer agreements, of course, affects the enforceability of the arbitration clauses themselves. If, as plaintiffs intend to argue, the entitlement to rescission on this federal claim is non-arbitrable, plaintiffs are entitled to litigate the rescission issue in federal court before any order for arbitration of the state claims can issue. Moreover, as a pragmatic concern, Judge Coyle's ruling upon the petition to compel arbitration will necessarily determine the scope of issues arbitrated. Accordingly, plaintiffs do not concede the arbitrability of the pendent state claims and will await Judge Coyle's ruling before taking any steps to pursue arbitration.

But plaintiffs do not raise rescission as a defense to arbitration in their written opposition or elsewhere in their papers. This

argument appears only in the letter to Ms. Kaplan, and was again made at oral argument. Nevertheless, the court will consider plaintiffs' rescission argument as if fully presented in their opposition papers. The argument is still unavailing.

■ In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (*"Prima Paint"*), an integrated contract between the parties included an arbitration clause covering "[a]ny controversy or claim arising out of or relating to this Agreement." Prima Paint sought to resist arbitration, claiming that the entire contract was induced by fraud. Flood & Conklin argued that the issue of fraudulent inducement was for the arbitrators to decide. The Court agreed, noting that section 4 of the United States Arbitration Act of 1925, 9 U.S.C. § 4, provides that a federal court must order arbitration "once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.'" *Id.* at 403, 87 S.Ct. at 1805, *quoting* 9 U.S.C. § 4. The Court reasoned that

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. Section 4 does not expressly relate to situations like the present in which a stay is sought of a federal action in order that arbitration may proceed. But it is inconceivable that Congress intended the rule to differ depending upon which party to the arbitration agreement first invokes the assistance of a federal court. We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Id.* at 403–404, 87 S.Ct. at 1805–1806, 18 L.Ed.2d at 1277. The *Prima Paint* holding can be reduced to the fairly simple proposition that a challenge based on fraud in the inducement of the whole contract (including the arbitration clause) is for the arbitrator to decide, while a challenge based on fraud in the inducement of the arbitration clause only is for the court to decide. *See Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir.1985). *See also S.A. Mineracao Da Trinidade-Samitri v. Utah International, Inc.*, 745 F.2d 190, 195 (2d Cir.1984) (claims of fraud in inducement of contract are arbitrable); *Life of America Insurance Co. v. Aetna Life Insurance Co.*, 744 F.2d 409, 413 (5th Cir.1984) ("Absent allegations of fraud in the inducement of the arbitration clause itself arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the parties' claims"). The alleged fraud in the inducement must apply solely to the arbitration clause. *See Schacht v. Beacon Insurance Co.*, 742 F.2d 386, 390 (7th Cir.1984), else the issue is one for the arbitrators to decide.

The *Prima Paint* doctrine is not limited, however, to rescission based on fraudulent inducement, but extends to all challenges to the making of a contract: "The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself. The basis of the underlying challenge to the contract does not alter the [*Prima Paint*] principle." *Unionmutual Stock Life Insurance v. Beneficial Life*, 774 F.2d 524, 529 (1st Cir.1985) (frustration of purpose as ground for rescission); *Hull v. Norcom*, 750 F.2d 1547, 1549–50 (11th Cir.), *reh'g denied*, 757 F.2d 287 (1985) (challenge based on lack of mutuality of arbitration clause); *Merrill Lynch v. Haydu*, 637 F.2d 391 (5th Cir. 1981) (duress and unconscionability to be decided by arbitrator).

■ Thus, applying *Prima Paint* to this case, plaintiffs cannot avoid arbitration through rescission of the entire agreement, unless the arbitration clause is not broad

enough to encompass arbitration of claims of invalidity of the contract. In this regard, the arbitration clauses are sufficiently broad. Paragraph 11 of the customer agreement between Merrill Lynch and plaintiffs reads:

It is agreed that any controversy between us arising out of your business or this agreement shall be subject to arbitration....

Similarly, paragraph 15 of the Customer Agreement between Paine Webber and plaintiffs provides that "[a]ny controversy between us arising out of or relating to this contract or the breach thereof shall be settled by arbitration." The "arising out of" language is broad enough to include disputes over validity of the contract itself. *See Prima Paint*, 388 U.S. at 406, 87 S.Ct. at 1807. *See also Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F.2d 1458, 1463–64 (9th Cir.1983). Accordingly, a claim for rescission of the customer agreement under section 29(b) would not prevent arbitration; under *Prima Paint*, plaintiffs would have to challenge the validity of the arbitration clause alone.

Plaintiffs do not indicate the basis of their proposed rescission claim, as this argument appears only in the letter to Marilyn Kaplan dated April 30. But there, Mr. Buchanan very explicitly states that "plaintiffs are seeking, among other things, rescission of the *customer agreements* under § 29 of the Securities Exchange Act of 1934." But plaintiffs' request to amend the complaint to assert a rescission claim under section 29 is directed to the customer agreements, not the arbitration clauses alone. *See infra* at 661–665. Thus, the court's decision to allow plaintiffs to allege such a claim has no bearing on the arbitrability of the state claims. Under *Prima Paint*, Mr. Buchanan is absolutely incorrect in asserting that "Rescission of the customer agreements, of course, affects the enforceability of the arbitration clauses themselves," because the arbitration clause is severable from the rest of the customer agreement. Under *Prima Paint*, entitlement to rescission of the entire customer agreement must be submitted to arbitra-

tion; it cannot be submitted to the court once the court has identified a broad arbitration clause. Hence, plaintiffs' rescission argument will not prevent arbitration of the state causes of action and the court compels their arbitration.

### B. *Sanctions.*

■ Merrill Lynch seeks sanctions under Rule 11 for plaintiffs' refusal to arbitrate their state law claims and their institution of this lawsuit despite requests by Merrill Lynch to go to arbitration. Paine Webber does not join in the motion for sanctions, but does not oppose it.

Rule 11, Federal Rules of Civil Procedure reads, in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable enquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

Fed.R.Civ.P. 11. The gist of defendants' motion for sanctions is that plaintiffs refused to submit the state claims to arbitration despite the *Byrd* decision, and that plaintiffs refused to dismiss or replead the federal claims, thereby forcing defendants to bring the instant motion. The basis for defendants' sanction request is presented in several pieces of correspondence between respective counsel, and in the affidavits of Marilyn Kaplan and Timothy Buchanan.

Having reviewed the correspondence and the declarations, the court concludes that

Rule 11 sanctions are not warranted in this case. Plaintiffs' refusal to dismiss the federal securities claims and replead the RICO claim cannot be said to be unwarranted considering the state of existing law. *See infra*, page 673. The submitted correspondence certainly does not reflect well on plaintiff's counsel, who should have been well beyond "examining" various arguments at the time his opposition papers were due. But counsel was not incorrect in opposing arbitration of the federal claims, and there is a dispute, or at least a misunderstanding, as to whether Merrill Lynch initially proposed arbitration of the state claims apart from the federal claims. Plaintiffs' failure to submit to arbitration of the state claims alone, when defendants' intent became clear, does not deserve sanctioning because at the time plaintiffs had plausible defenses to arbitration. Counsel's failure to properly argue those defenses does not in the court's opinion require imposition of sanctions.

#### C. *Federal Securities Claims.*

█ Plaintiffs' first four claims arise out of federal securities laws. Claims one and two are based on section 15(c) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78*o*(c), and claim three is based on section 10(b) of the 1934 Act, 15 U.S.C. § 78j and SEC Rule 10b–5. Claim four arises under section 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77q(a). Defendants argue that the better reasoned view, and the trend in authority, requires arbitration of these claims.

Plaintiffs contend that federal policy favoring arbitration does not override the importance of providing a judicial forum for securities claims, a view which the Ninth Circuit recently has adopted.[1]

#### 1. Arbitrability of 1934 Act Claims.

In *Conover v. Dean Witter Reynolds, Inc.*, 794 F.2d 520 (9th Cir.1986), the Ninth Circuit held that claims arising under section 10(b) of the 1934 Act and Rule 10b–5 are not subject to arbitration. The court reasoned that Congress' intent to prohibit arbitration of these claims, as evinced by the text, as well as the legislative and judicial history of the 1934 Act, prohibited arbitration of such claims despite strong federal policy favoring arbitration. In so ruling, the Ninth Circuit formally joined other circuits holding that 1934 Act claims are not subject to arbitration, see, e.g., *McMahon v. Shearson/American Express*, 788 F.2d 94 (2d Cir.1986), and halted a trend among district courts holding the opposite. *See, e.g., Sacks v. Dean Witter Reynolds, Inc.*, 627 F.Supp. 377, [current] Fed.Sec.L.Rep. (CCH) ¶ 92,429 (C.D.Cal. November 18, 1985).

Although *Conover* did not touch upon claims arising under section 15(c) of the 1934 Act, the court's reasoning equally compels denying arbitration of those claims. Section 15(c) creates, as does section 10(b), at most an implied private right of action. Examining the legislative and judicial history of the 1934 Act, the *Conover* court emphasized that "Congress expressly recognized the non-arbitrable na-

---

**1.** Plaintiffs also argued at oral argument that the arbitration clauses are unenforceable under the SEC regulation found at 17 C.F.R. § 240.-15c2–2, which requires brokers to disclose to customers that they are not required to arbitrate any dispute arising under the federal securities laws. Most courts addressing this issue have held that section 15c2–2 is procedural only, and merely serves to guarantee that potential plaintiffs receive notice that an agreement to arbitrate does not override existing federal laws limiting the scope of possible litigation. Thus, section 15c2–2 does not create or preserve rights to litigate in federal court, and does not alone prevent arbitration of federal securities claims. *See Steinberg v. The Illinois Company,* 635

F.Supp. 615, Fed.Sec.L.Rep. (CCH) § 92,792 (N.D.Ill.1986); *Fisher v. Prudential-Bache Securities, Inc.,* 635 F.Supp. 234 (D.Md.1986); *Shotto v. Laub,* 632 F.Supp. 516 (D.Md.1986); *Finkle and Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1510 (S.D.N.Y.1985); *Boyd v. Merrill Lynch etc.,* 614 F.Supp. 940 (S.D.Fla.1985). *But see Levendag v. Churchill,* 623 F.Supp. 620 (D.S.C.1985); *Glavin v. Prudential-Bache Securities,* 623 F.Supp. 629 (D.S.C.1985) (Section 240.-15c2–2 prohibits brokers from using pre-dispute arbitration clauses). Because the court holds that the federal securities claims are not arbitrable, the court does not decide the significance of this regulation to the matter at hand.

ture of disputes between brokers and customers" in its 1975 revisions to the 1934 Act. *Conover v. Dean Witter Reynolds, Inc.,* 794 F.2d at 524. The policy of deterring fraudulent securities practices, served by judicial enforcement of section 10(b), reflects, the court reasoned, the unsuitability of arbitration for such claims. *Id.* Hence, a judicial forum over all 1934 Act claims is necessary to accomplish that statute's purpose of establishing reasonably complete and effective control over securities transactions. *Id.* Although the court holds that no private remedy exists under section 15(c), *see infra,* at 660, vesting the power to make that determination with the court rather than arbitrators enforces this policy.

The court in *Conover* also compared the reasons for non-arbitrability of claims under the 1933 Act, as discussed in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), with considerations relevant to the 1934 Act. 794 F.2d at 525–526. The Ninth Circuit identified three main reasons the Supreme Court gave in *Wilko* for concluding that Congress intended to void agreements to arbitrate 1933 Act claims: (1) securities customers are subject to overbearing by securities dealers, (2) arbitration is not the equivalent of judicial proceedings in securities cases under the 1933 Act, because judicial direction is needed to insure the effectiveness of the protective provisions of the Act, and (3) because of the special jurisdictional and procedural protections of the 1933 Act, a securities customer surrenders more by agreeing to arbitrate claims under the Act than would a person who agrees to arbitrate a normal business transaction claim. *Id.* The Ninth Circuit concluded that all of these "factors that led the *Wilko* Court to conclude that Congress intended to preclude enforcement of arbitration agreements under the 1933 Act can be no less applicable to claims under the 1934 Act." *Id.* at 527. The circuit's conclusion applies as well to section 15(c) claims as it does to section 10(b) claims; indeed, the Ninth Circuit has just held that section 15(c) claims are not arbitrable. *Badart v. Merrill, Lynch Pierce,*

*Fenner & Smith, Inc.,* 797 F.2d 775 (9th Cir.1986).

2. Arbitrability of 1933 Act Claim.

In *Wilko v. Swan,* 346 U.S. at 427, 74 S.Ct. at 182, the Supreme Court held that claims arising under section 12(2) of the 1933 Act were not arbitrable. Plaintiff's claim arises, however, under section 17(a) of the 1933 Act, therefore, defendants assert that *Wilko* does not apply to it. Defendants argue, in essence, that the *Wilko* Court only addressed the arbitrability of a claim under section 12(2) of the 1933 Act, which specifically provides as private remedy, 15 U.S.C. section 77*l*(2), which requires a judicial forum to assure its effectiveness. 15 U.S.C. § 77v(a). But unlike section 12(2), section 17(a) does not contain a provision for a private remedy. Consequently, defendants argue that the Court's concern in *Wilko* that Congress intended to insure a judicial forum for claims arising under the 1933 Act is not present here because section 17(a) contains no express remedies.

Defendants' argument is completely undermined by the Ninth Circuit's reasoning in *Conover.* There, the court extended to implied rights of action under the 1934 Act the same heightened solicitude the *Wilko* Court gave to the express remedy of section 12(2) of the 1933 Act. Accordingly, *Conover* indicates that the reasoning and holding of *Wilko* applies to the implied remedy of section 17(a). Further, because section 17(a) and section 10(b) "are virtually identical," *Brener v. Becker Paribas, Inc.,* 628 F.Supp. 442, 451 (S.D.N.Y.1985), the Ninth Circuit's determination that section 10(b) claims are not subject to arbitration supports the conclusion that section 17(a) claims are also non-arbitrable. The court therefore denies the petition to compel arbitration of plaintiff's federal securities claims.

D. *RICO Claim.*

Defendants contend that the fifth claim, arising under RICO, is also subject to arbitration. Although an increasing number of courts have held that RICO

claims are subject to arbitration,[2] this court declines to so hold in light of the important public interest in the enforcement of RICO.

In *S.A. Mineracao Da Trindade-Samitri v. Utah International, Inc.*, 576 F.Supp. 566 (S.D.N.Y.1983), *aff'd on other grounds*, 745 F.2d 190 (2d Cir.1984), the court engaged in a lengthy analysis of the policies underlying RICO and the federal arbitration statute. Noting Congress' express purpose for RICO to "eradicate organized crime in the United States", the court concluded that

> Given the purposes of RICO, it is abundantly clear that its enforcement involves concerns touching upon vital national interests. Although RICO claims may be brought by private individuals, the resolution of such claims will frequently have an impact on society at large. The Court must infer that Congress did not intend to entrust the enforcement of such laws to arbitrators, and consequently, the Court holds that claims asserted under RICO are not arbitrable.

576 F.Supp. at 575. This court is persuaded by such reasoning and agrees with the conclusion, which has been recently adopted by the Second Circuit. *See McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94, 98 (2d Cir.1986), *aff'g in relevant part*, 618 F.Supp. 384, 387 (S.D.N.Y. 1985) (RICO claim non-arbitrable because of "important federal policies inherent in the enforcement of RICO by the federal courts"). *See also Weizman v. Adornato*, 625 F.Supp. 1101, 1102 (E.D.N.Y.1985); *Wilcox v. Ho-Wing Sit*, 586 F.Supp. 561, 567 (N.D.Cal.1984) (RICO claims entitled to special protection afforded by courts).

Defendants argue that the reasoning of the *S.A. Mineracao* case is no longer sound due to the Supreme Court's decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). There, the Court held that claims arising under the Sherman Act and encompassed within a valid arbitration clause in an agreement embodying an international commercial transaction are arbitrable pursuant to the Federal Arbitration Act. In doing so, the Court seemingly developed a uniform standard for determining when a federal statute allows for arbitration of claims arising under it:

> Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.

*Id.* at ——, 105 S.Ct. at 3355, 87 L.Ed.2d at 456. Because *S.A. Mineracao* is premised on the rule that Sherman Act claims are not arbitrable, defendants contend that *Mitsubishi Motors* undercuts its reasoning. Defendants also contend that under the *Mitsubishi Motors* standard, Congress has not evinced an intention to preclude arbitration of RICO claims.

The reasoning underlying the *S.A. Mineracao* decision remains sound. *Cf. Wilcox v. Ho-Wing Sit*, 586 F.Supp. at 567. The Court's concern in *Mitsubishi Motors* for providing a forum acceptable to both parties in an international trade dispute is not present in this lawsuit involving domestic securities transactions. Also, Congress' very clear purpose in enacting RICO, and the national interests it touches upon, is sufficient indication of intent to preclude waiver of judicial remedies under the *Mitsubishi Motors* standard to override competing federal policies favoring arbitration.

Other factors militate in favor of providing a judicial forum for RICO claims. The law interpreting the RICO statute perhaps no longer is "embryonic," but the unsettled nature of the law suggests that RICO claims are better left to courts than to

**2.** Cases holding that RICO claims are arbitrable include *Baker v. Paine Webber, Jackson & Curtis, Inc.*, 637 F.Supp. 419, [current] Fed.Sec.L. Rep. (CCH) ¶ 92,757 (D.N.J.1986); *Gehardstein v. Shearson/American Express*, [current] Fed. Sec.L.Rep. (CCH) ¶ 92,512 (N.D.Oh. March 3, 1986); *Ross v. Mathis* 624 F.Supp. 110 [current] Fed.Sec.L.Rep. (CCH) ¶ 92,343 (N.D.Ga.1985); *Sacks v. Dean Witter Reynolds, Inc.*, 627 F.Supp. 377, [current] Fed.Sec.L.Rep. (CCH) ¶ 92,429 (C.D.Cal. November 18, 1985); *Finn v. Davis*, 602 F.Supp. 801 (S.D.Fla.1985). The question whether RICO claims are arbitrable has never been decided by the Ninth Circuit.

arbitrators. *Cf. Wilcox v. Ho-Wing Sit,* 586 F.Supp. at 567. Further, because the RICO claims here are predicated on violations of the securities laws, the Ninth Circuit's decision in *Conover* also militates against compelled arbitration. *Id. Compare Sacks v. Dean Witter Reynolds, Inc.,* 627 F.Supp. 377 [current] Fed.Sec.L.Rep. (CCH) at ¶ 92,429 (arbitrability of securities claims supports arbitrability of RICO claims). Finally, when as here RICO claims are joined with claims for securities fraud, the court is reluctant to compel arbitration of the RICO claims now that the federal securities claims are not subject to arbitration. *See Weizman v. Adornato,* 625 F.Supp. at 1102. The court therefore will deny arbitration of the RICO claim.

### E. *Stay Pending Arbitration.*

■ Defendants seek a stay of all proceedings until the completion of arbitration. Under the Federal Arbitration Act, the court must stay litigation of all claims subject to arbitration, but has discretion whether to stay or proceed with the non-arbitrable claims. *See* 9 U.S.C. § 3; *Wilcox v. Ho-Wing Sit,* 586 F.Supp. at 567. Accordingly, plaintiffs' state law claims are stayed. Because the court believes that judicial economy will not be served by staying the federal claims, the court declines to stay those claims and will allow them to proceed in this forum.

### III.

For the reasons stated above, the court concludes that plaintiffs' federal claims are not subject to arbitration. The court believes, however, that because plaintiffs do not attack the validity of the arbitration clauses, and offer no reason why they do not encompass the pendent state claims, those claims are arbitrable. The court will therefore compel arbitration of the state claims and order a stay of those claims.

**3.** The sixth claim for relief contains allegations against Paine Webber only, and so it brings a separate motion to dismiss that claim. However, the sixth claim is a pendent state claim and is presently stayed pending arbitration;

But the court will not stay the federal claims, and so proceeds to defendants' motion to dismiss.

### MOTION TO DISMISS

Defendants Merrill Lynch and Hollis Anderson move this court to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. The other defendants join in this motion.[3] Merrill Lynch further moves this court to impose sanctions under Rule 11, Federal Rules of Civil Procedure, against plaintiffs and their attorney for alleging a RICO violation with allegedly no factual basis. Although the other defendants do not join in this motion, they do not oppose it. Because the pendent state claims are stayed pending the outcome of arbitration, the court will not rule upon the motion to dismiss to the extent it deals with those claims.

Defendants raise four grounds for dismissing the federal claims: (1) Section 17(a) of the 1933 Act does not create a private right of action, (2) Section 15 of the 1934 Act does not create a private right of action, (3) Plaintiffs fail to state a claim under section 10(b) and Rule 10b–5, (4) Plaintiffs fail to state a claim under RICO.

### I.

### A. *Whether Section 17(a) Creates a Private Right of Action.*

Plaintiffs' fourth claim for relief is grounded on section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a). Defendants assert that no relief is available to plaintiffs under that section because the "overwhelming" weight of authority and better reasoning holds that no private remedy exists under section 17(a).

Section 17(a) does not explicitly provide for a private remedy.[4] Therefore, the issue

therefore, the court will not rule upon the motion.

**4.** Section 17(a) provides:

is whether such a remedy can be implied. The court need not examine the "overwhelming" weight of authority, nor engage in lengthy analysis to find the answer. In *Mosher v. Kane*, 784 F.2d 1385 (9th Cir. 1986), the Ninth Circuit held that a private right of action does exist under section 17(a). There, the district court dismissed plaintiff's claim for relief under section 17(a) on the ground that plaintiff lacked standing to bring the claim. The circuit reversed, stating that "appellants have, at least facially, pleaded a complaint sufficient to state a claim for relief." *Id.* at 1391. By reaching this conclusion, the Ninth Circuit necessarily had to hold that a private right of action exists under section 17(a). The court explicitly stated, "we believe that the better view is to recognize an implied right of action." 784 F.2d at 1391, n. 9.

 The court concludes, therefore, that under *Mosher v. Kane* a private right of action exists under section 17(a).[5] Several other circuits have reached this conclusion. *See Kirshner v. United States*, 603 F.2d 234 (2d Cir.), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *Daniel v. International Brotherhood of Teamsters, et al.*, 561 F.2d 1223 (7th Cir.1977); *Newman v. Prior*, 518 F.2d 97 (4th Cir.1975). *See also Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981) (Private right of action exists under section 17(a)) (dictum).

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

### B. *Whether the Fourth Claim is Sufficiently Pleaded.*

But defendants, contending that plaintiffs "apparently recognize" that they have no remedy under section 17(a), argue that the fourth claim fails because it is insufficiently pleaded under Rule 9(b), Federal Rules of Civil Procedure.

 Rule 9(b), Federal Rules of Civil Procedure, requires that in all fraud allegations, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Rule 9(b) must be read in conjunction, however, with Rule 8(e), which requires only a "short and plain statement of the claim." Fed.R. Civ.P. 8(a). *See also* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1298 at 406 n. 66, and cases cited therein (1969). The Ninth Circuit standard was articulated in *Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir. 1973):

> Rule 9(b) requires that the circumstances constituting fraud must be stated with particularity. But the rule does not require nor make legitimate the pleading of detailed evidentiary matter.... Nor does the rule require any particularity in connection with an averment of intent, knowledge or condition of mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.

5. Defendants argue in their reply brief that this court should reject *Mosher v. Kane* because the Ninth Circuit in that case did not explain its reasoning and because the implication of a private right of action under section 17(a) is inconsistent with the Supreme Court's standards for implying private rights of action. The United States Supreme Court has never ruled, however, that a private remedy does not exist under section 17(a), and until such time as it or an *en banc* Ninth Circuit panel does, *Mosher v. Kane* is binding upon this court. The fact that the circuit did not explain its reasoning does not, as defendants contend, make the case any less binding or authoritative. As a lower court, it is not this court's function to question the soundness of a higher court's ruling, or to ignore the ruling altogether.

*See also Bosse v. Crowell, Collier & MacMillan,* 565 F.2d 602, 611 (9th Cir.1977). While mere conclusory allegations of fraud will not suffice, statements of the time, place and nature of the alleged fraudulent activities will satisfy Rule 9(b). *Id.* Plaintiffs must also allege the specific content of the false representations as well as the identities of the persons making the misrepresentations. *See Schnitzer v. Oppenheimer & Co., Inc.,* 633 F.Supp. 92, 96 (D.Ore.1985); *Lopez v. Dean Witter Reynolds, Inc.,* 591 F.Supp. 581, 585 (N.D.Cal. 1984). In cases involving multiple defendants, plaintiffs must specify the role of each defendant in the fraud and state whether the particular defendant is being sued as a principal or as an aider and abettor. *Riley v. Brazeau,* 612 F.Supp. 674, 677 (D.Ore.1985).

Measured against these standards, the fourth claim satisfies Rule 9(b) requirements in most respects. Although the fourth claim itself contains no factual allegations, it incorporates by reference paragraphs one through thirty-two and forty through forty-four, which do indicate the factual basis for plaintiffs' claim. The nature of the alleged wrongdoing is summarized in paragraph 32: "Defendants Powell and Paine Webber, and each of them, at all material times concealed from plaintiffs the true facts regarding plaintiffs account and in fact misrepresented the accurate status of that account." The complaint also alleges the time frame of the course of conduct of which plaintiffs complain. Complaint, ¶¶ 13, 20. In addition, the complaint lists a series of allegedly false representations. *See* Complaint ¶ 11, 14, 15, 21, 23, 24, 25, 27, 29, 31. The allegations state the time, place, and nature of the allegedly false representations. Hence, the complaint contains more than "conclusory allegations of wrongdoing" and plaintiffs have alleged more than "boilerplate claims of misrepresentation." *Kimmel v. Peterson,* 565 F.Supp. 476, 481 (E.D.Penna.1983).

■ Nevertheless, the court will require plaintiffs to amend the complaint in several respects. First, plaintiffs will denote exactly which defendants are being charged under section 17(a) and in what capacity. Plaintiffs are to avoid such quaint averments as "Defendants Powell and Paine Webber and each of them" and instead specifically state which defendants committed which alleged acts. Also, the court will ask the plaintiffs to carefully allege which representations were false and exactly how they were false or the omissions misleading. Otherwise, it is not clear whether plaintiffs are alleging actionable fraud or merely bad investment advice—defendants must have fair notice of the fraud claimed.

## II.

### A. *Whether Section 15 Creates a Private Right of Action.*

■ In their first and second claims for relief, plaintiffs allege violations of section 15(c) of the 1934 Act, 15 U.S.C. § 78o. Plaintiffs allege that defendants engaged in excessive trading on plaintiffs' accounts and placed plaintiffs in unsuitable investments. Defendants argue that the first and second claims must be dismissed because no private right of action exists under section 15(c).

Section 15(c), as section 17(a), does not explicitly provide a private right of action. Therefore, the issue again is whether such a private right can be implied. Defendants cite *SEC v. Seaboard Corp.,* 677 F.2d 1301 (9th Cir.1982) for the proposition that the Ninth Circuit does not recognize a private right of action under section 15(c). In *Seaboard,* the court did state that "We believe the terms of the sections and its legislative history indicate that Congress did not intend that such liability be implied," *Id.* at 1314; however in *Seaboard,* the precise issue was whether an action for secondary liability could be implied from section 15(c) because plaintiff's claim was based upon an aider and abettor or conspirator theory of liability. The Ninth Circuit narrowly held that "on this record summary judgment could properly be granted on the basis that no private right of action is to be implied under this section." *Id.* at 1313–1314.

Arguably, the *Seaboard* decision is limited to the facts of the case, and only holds that section 15(c) does not create a remedy for secondary liability. The broad language in the case suggests, however, that the Ninth Circuit does not recognize an implied right of action under section 15(c), and this court so holds.[6] But plaintiffs do not ask the court to distinguish *Seaboard* to save their first and second claims; rather, they assert that their claims are based on a limited right of rescission under section 29(b) of the 1934 Act, 15 U.S.C. section 78cc, of "each and every transaction consummated on their behalf by defendants." Plaintiff's Opposition Memo, page 17.

Plaintiffs concede that the complaint does not specifically invoke section 29(b), but argue that the complaint, liberally interpreted, seeks equitable relief under section 29(b). The court agrees with the defendants, however, that to read in the asserted cause of action under section 29(b) in place of the plainly stated section 15(c) claim, would not be liberal interpretation, but sheer invention by this court. Because plaintiffs have no private right of action under section 15(c), and they fail to state a claim for relief under section 29(b), the court will grant defendants' motion to dismiss the first two claims.

B. *Whether Plaintiffs Can State a Claim Under Section 29(b).*

 The remaining issue is whether the court should allow plaintiff leave to amend the complaint to allege a claim un-der section 29(b). The controversy is whether a party can obtain rescission under section 29(b) for violations of section 15(c) of the 1934 Act, for which there is no private right of action. This is a matter of first impression in this circuit. If that question is answered in the affirmative, the question then becomes whether section 29(b) applies to rescind the transactions complained of by plaintiffs.[7]

Section 29(b) provides, in relevant part:
(b) Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation.

15 U.S.C. § 78cc(b). Section 29(b) renders the offending contract voidable at the option of the innocent party. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 387, 90

---

**6.** Dictum in two other Ninth Circuit cases also indicates that a private remedy under section 15(c) does not exist in this circuit. In *Berner v. Lazzaro,* 730 F.2d 1319 (9th Cir.1984), *aff'd* 472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985), the court, citing *Seaboard,* stated that the "district court correctly dismissed the Section 15(c) claim. No private right of action exists under this section." *Id.* at 1320 n. 1. But the district court's dismissal of the section 15(c) claim was not squarely presented on appeal.

In *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530 (9th Cir.1984), the district court dismissed two claims of the complaint, including plaintiff's section 15(c) claim. Nothing, this, the Ninth Circuit stated that "The Ninth Circuit recently held, in *SEC v. Seaboard Corp.,*

[citation] that section 15 does not create a private cause of action." *Id.* at 533 n. 2. Because plaintiff did not appeal his section 15(c) claim, the court's statement is dicta.

Nevertheless, the language in these cases, though dicta or at best limited to the facts of the case, suggest that if the issue were presented today, the circuit would rule that there is no implied private right of action under section 15(c).

**7.** The parties also appear to contest whether damages are available under section 29(b), although it is not clear whether plaintiffs are seeking leave to amend to request them, as plaintiffs speak only in terms of rescission and restitution.

S.Ct. 616, 623, 24 L.Ed.2d 593 (1970) (dictum). *Accord Royal Air Properties, Inc. v. Smith,* 312 F.2d 210, 213 (9th Cir.1962). Section 29(b), by implication, provides a private, equitable cause of action for rescission or similar relief. *See Regional Properties, Inc. v. Financial and Real Estate Consulting Co.,* 678 F.2d 552, 557–558 (5th Cir.1982) (courts have "uniformly held or assumed" that suits can be brought under section 29(b)); *Royal Air Properties, Inc. v. Smith,* 312 F.2d at 210. *See generally* Greenbaum & Stein, *Section 29(b) of the Securities Exchange Act of 1934: A Viable Remedy Awakened,* 48 Geo.Wash. L.Rev. 1 (1979) (*"Viable Remedy"*).

Defendants distinguish those cases finding private remedies under section 29(b) on the ground that those courts have granted rescission under section 29(b) only where contracts violated sections of the 1934 Act which themselves grant private rights of action. *See Mills v. Electric Auto-Lite,* 396 U.S. at 375, 90 S.Ct. at 616 (section 14(a) violation); *Myzel v. Fields,* 386 F.2d 718 (8th Cir.), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968) (rescission for contracts in violation of section 10(b)); *Royal Air Properties, Inc. v. Smith,* 312 F.2d at 210 (rescission for violations of section 10(b) subject to equitable defenses). Under defendants' reasoning, section 29(b) serves as a form of relief rather than an independent basis of a private cause of action.

The court cannot entirely agree with defendants' logic. While the court believes that section 29(b) does not create an implied private right of action for money damages, see *Viable Remedy,* 48 Geo.Wash.L. Rev. at 44 ("better argument" is that section 29(b) does not give rise to action for money damages), it does create an implied private cause of action for rescission or similar equitable relief. *See Regional Properties v. Financial and Real Estate Consulting Co.,* 678 F.2d at 558. *See also Western Federal Corp. v. Erickson,* 739 F.2d 1439, 1444 n. 5 (9th Cir.1984) ("An innocent party may sue under section 29(b) to rescind a contract"). This conclusion is supported by language in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, in which the Court stated in dicta that the interests of the "innocent party" to a contract are protected by "giving him the right to rescind," under section 29(b). *Id.* at 387–388, 90 S.Ct. at 623. The conclusion that section 29(b) itself impliedly creates a private cause of action is also supported by the decision in *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). There, the Supreme Court held that section 215(b) of the Investment Advisers Act, 15 U.S.C. § 80b–15,[8] which is nearly identical to section 29(b) of the 1934 Act, provides a private cause of action. In so holding the Court reasoned that

By declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere. At the very least Congress must have assumed that § 215 could be raised defensively in private litigation to preclude the enforcement of an investment advisers contract. But the legal consequences of voidness are typically not so limited. A person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid.... Moreover, the federal courts in general

---

8. Section 215(b) of the Investment Advisers Act provides, in relevant part:

Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of anoy such provi-

sion, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

15 U.S.C. § 80b–15(b).

have viewed such language as implying an equitable cause of action for rescission or similar relief.

For these reasons we conclude that when Congress declared in § 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission ..., and for restitution.

*Id.* at 17, 100 S.Ct. at 246 (citations and footnotes omitted). The court is thus persuaded by analogy that an implied private right of action exists under section 29(b): "Because the Court in *Lewis* was persuaded by the language of section 215 of the Advisers Act that an implied private right of action exists, it necessarily follows that section 29(b) leads to a similar conclusion with respect to the Exchange Act." *Viable Remedy,* 48 Geo.Wash.L.Rev. at 44.

 Further, this court, having concluded that section 29(b) creates an implied right of action and is not simply a remedy for other 1934 Act provisions, does not see why section 29(b) causes of action should be limited to contracts which violate only those 1934 Act provisions creating private rights of action. The language of section 29(b) certainly does not yield such a limitation, for it declares void any contract made in violation of *any* provision of the 1934 Act. The limitation proposed by defend-

ants is sensible if section 29(b) is interpreted to allow an action for damages; otherwise, that section would bring in implied rights of action through the back door. But this danger is not present when section 29(b) claims are limited to rescission or other equitable relief. *See Viable Remedy,* 48 Geo.Wash.L.Rev. at 44. Moreover, the limitations period contained in section 29(b) for contracts claimed to be void by reason of a violation of section 15 of the 1934 Act,[9] is a clear indication that a rescission claim may be based upon a violation of section 15(c).

Indeed, the distinction argued by defendants, though not invalid, does not prove the conclusion for which it is offered.[10] It is true that the cases they cite awarded relief under section 29(b) only where the plaintiff alleged violations of a 1934 Act provision giving a private remedy. Yet, these cases do not mean that a rescission claim cannot be grounded on other sections of the 1934 Act *as well.* In both *Regional Properties v. Real Estate Consulting Co.,* 678 F.2d at 552, and *Eastside Church of Christ v. National Plan, Inc.,* 391 F.2d 357 (5th Cir.), *cert. denied,* 393 U.S. 913, 89 S.Ct. 234, 21 L.Ed.2d 198 (1968), the Fifth Circuit recognized claims for rescission under section 29(b) based upon violations of section 15(a) of the 1934 Act. It is unclear whether the Fifth Circuit recognizes a private cause of

---

**9.** The pertinent passage of section 29(b) is as follows:

(A) That no contract shall be void by reason of this subsection because of any violation or rule or regulation prescribed pursuant to paragraph (2) or (3) of subsection (c) of section 78o of this title, and (B) that no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this subsection, by any person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1) of subsection (c) of section 78o of this title, unless such action is brought within one year after the discovery of such sale or purchase involves such violation and within three years after such violation.

15 U.S.C. § 78cc(b).

**10.** Nor does defendants' reliance on the *Viable Remedy* article. The authors there state:

Second, a threshold question in analyzing section 29(b) is whether the remedy provided by the section is available only when there has been a violation of another section of the Exchange Act or any of the rules or regulations promulgated thereunder. The language seems to confirm this view, because it implies that section 29(b) may be involved only when there is a contract that is formed or performed in violation of another provision of the Exchange Act. The courts interpreting the section have unanimously reached this conclusion.

48 Geo.Wash.L.Rev. at 4–5 (footnotes omitted). The court agrees that section 29(b) may only be invoked when a contract is formed or performed in violation of another provision of the 1934 Act—that is clearly required by the language of section 29(b). But neither this passage, nor the court, concludes that the violation must be of a provision creating a private remedy.

action under section 15;[11] nevertheless, a finding of an implied remedy under section 15(a) was not a prerequisite to that circuit's conclusion allowing a rescission claim under section 29(b) in those cases. The Ninth Circuit's strong suggestion in *Western Federal Corp. v. Erickson*, 739 F.2d at 1439, that section 29(b) creates an implied right to rescind contracts made in violation of section 15(a), while recognizing that no implied cause of action exists under section 15, lends support to the proposition that a section 29(b) claim can be based on 1934 Act provisions that do not contain private rights of action. *Id.* at 1443–1444 n. 5.

■ The court holds, therefore, that plaintiff may state an equitable claim for rescission under section 29(b) based upon violations of section 15(c) of the 1934 Act. The court then must address defendants' argument that the rescission of the individual transactions sought by plaintiffs is not available.

Plaintiffs state in their brief that they seek rescission of the individual transactions made on their accounts with defendants, as well as rescission of the customer agreements themselves. Relying on *Slomiak v. Bear Stearns & Co.*, 597 F.Supp. 676 (S.D.N.Y.1984), defendants contend that section 29(b) has been used to rescind only an underlying contract made in violation of section 15(c), not individual transactions. Also, defendants argue that plaintiffs have alleged no facts suggesting that plaintiffs' customer agreements with them are void.

In *Slomiak*, the court held that plaintiff could not state a cause of action for rescision under section 29(b) for the liquidation of his account in violation of Rule 10b–16 because plaintiff did not allege that the customer agreements establishing his margin and repurchase accounts at Bear Stearns were themselves unlawful. The court first ruled, distinguishing between a "contract" and a "transaction" that under section 29(b) only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts. *Id.* at

682. *See also Zerman v. Jacobs*, 510 F.Supp. 132, 135 (S.D.N.Y.), *aff'd*, 672 F.2d 901 (2d Cir.1981); *Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F.Supp. 286, 291 (D.Conn.1979).

The court in *Slomiak*, relying on *Drasner v. Thomson McKinnon Securities*, 433 F.Supp. 485 (S.D.N.Y.1977), then construed section 29(b) as rendering void only those contracts which by their terms violate the 1934 Act on the rules and regulations thereunder, for "it is only such contracts which are 'made in violation of,' or 'the performance of which involves the violation of' the statute and the rules and regulations thereunder." 597 F.Supp. at 682, *quoting, Drasner v. Thomson McKinnon Securities, Inc.*, 433 F.Supp. at 502. Hence, defendants apparently argue that plaintiffs' section 29(b) claim fails because they cannot show that the customer agreements by their terms violated the 1934 Act.

■ The court agrees that under section 29(b) plaintiffs can only seek to rescind the customer agreement and not the individual transactions made on their accounts. *See Slomiak v. Bear Stearns & Co.*, 597 F.Supp. at 682. This interpretation of section 29(b) comports with its language, which specifically renders only contracts made in violation of the 1934 Act void. *See* 15 U.S.C. § 78cc. But the court does not believe that a contract must by its own terms violate the 1934 Act in order to be voidable udner section 29(b), for on a literal reading of that section "it is difficult to conclude that the court in *Drasner* correctly interpreted the section." *Viable Remedy*, 48 Geo.Wash.L.Rev. at 21. Under section 29(b) itself, which applies to contracts "made in violation of" or "the performance of which involves the violation of" the 1934 Act, it is the making or performance of the contract, and not simply its terms, which must be scrutinized to determine whether the voidability provisions apply. *Id.* The authors of *Viable Remedy* explain:

11. In *Rekant v. Desser*, 425 F.2d 872 (5th Cir. 1970), the court found it unnecessary to decide

whether section 15(d) of the 1934 Act contains a private remedy.

Thus, the express terms of a contract could be perfectly lawful, yet the 'making' of the contract might involve a violation of the [1934 Act] or its rules or regulations. Similarly, a contract whose terms do not violate the [1934 Act] or any rules or regulations thereunder could be performed in such a manner as to 'involve' a violation. In either case, the voidability provisions should apply even though the terms of the contract are within the bounds of the law.

*Id.* (footnotes omitted).

Although plaintiffs have alleged no facts which suggest that the underlying customer agreements with defendants are void, the court cannot say that they are unable to make such allegations. Accordingly, the first two claims of the complaint are dismissed but with leave for plaintiffs to amend in conformance with this decision.[12]

### III.

◈ A. *Whether Plaintiffs Claim Under Section 10(b) and Rule 10b–5 is Sufficiently Pleaded.*

Plaintiffs' third cause of action alleges violations of section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5.[13] Again citing Rule 9(b), Federal Rules of Civil Procedure, defendants argue that the complaint fails to specifically allege the time, place and nature of the allegedly fraudulent statements or omissions and who made them. *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866 (9th Cir.1977). Defendants also argue that the complaint is deficient because it does not distinguish between defendants.

Plaintiffs' section 10(b) claim has two aspects. Plaintiffs apparently claim that defendants' conduct violated the securities laws in that (1) it constituted churning and (2) it included various fraudulent misrepresentations and omissions. *See* Plaintiffs' Opposition Memo, page 19–21.

1. *Churning.*

■ "Churning" is "excessive trading by a broker exercising control over an account, disproportionate to the size, character and objectives of an account, for the purposes of generating commissions." *Faturik v. Woodmere Securities, Inc.*, 442 F.Supp. 943, 944 (S.D.N.Y.1977). A claim of churning states a cause of action for fraud within the meaning of section 10(b) and Rule 10b–5. *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1069 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978).

■ In order to establish their churning claim, plaintiffs must prove (1) that the broker engaged in excessive trading in light of the objectives and nature of the account and (2) that the broker dealer effectively exercised control over trading in the account and manipulated the account to his benefit. *Id.* While there appears to be a split of authority, this court follows the view that to satisfy Rule 9(b) with regard to the first element, the complaint should set forth a statement of facts which would permit a determination of either the turnover ratio of the account, or the percentage

---

**12.** Because plaintiffs' rescission claim goes only to the legality of the entire customer agreements, and not the arbitration clauses alone, plaintiffs' rescission claim has no bearing upon the court's ruling on the petition to compel arbitration. *See, supra,* pages 652–654.

**13.** 15 U.S.C. section 78j reads:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(a) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

of the account value paid in commissions. *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 541 (N.D.Ill. 1981). The plaintiffs need not list with particularity every transaction relevant to their claim. *Id. See also Lopez v. Dean Witter Reynolds, Inc.,* 591 F.Supp. 581, 584 (N.D.Cal.1984) (following *Baselski* ). *Compare Zonszein v. Bache Halsey Stuart Shields, Inc.* [current] Fed.Sec.L. Rep. (CCH) § 92,233 (S.D.N.Y. June 24, 1985) [Available on WESTLAW, DCTU database] (plaintiff must identify the nature, amount, and dates of the particular sales and transactions upon which the claim of churning is based).

■ The complaint easily passes this standard. Paragraphs 13 and 20 allege that defendants' activities during the relevant time frames produced an annual turnover rate of fifteen and ten times per year respectively. The complaint also adequately alleges that defendants exercised control over plaintiffs' account. Complaint, ¶¶ 40–41.

2. *Misrepresentations and Omissions.*

■ Rule 9(b), which applies to section 10(b) and Rule 10b–5 cases, see *Gottreich v. San Francisco Investment Corp.,* 552 F.2d at 866, requires that in all averments of fraud the circumstances constituting fraud be stated with particularity. Fed.R. Civ.P. 9(b). Plaintiffs must allege the time, place, and nature of the fraudulent activities and the specific content of the alleged misrepresentations. *See Bosse v. Crowell, Collier & MacMillan,* 565 F.2d 602 (9th Cir.1977); *Riley v. Brazeau,* 612 F.Supp. 674, 677 (D.Ore.1985). In cases involving multiple defendants, plaintiffs must specify the role of each defendant in the fraud. *See Riley v. Brazeau,* 612 F.Supp. at 677.

■ The court's discussion of Rule 9(b) in regard to the section 17(a) claim, see *supra,* at 660, applies to plaintiffs' sec-

tion 10(b) claim as well. Although paragraph 41 does not describe the time and place of the alleged misrepresentations, the time-frame of the alleged wrongdoing is clear from the complaint. Because the alleged misrepresentations are numerous and take place over an extended period of time, less specificity is required. *See Baselski v. Paine, Webber, Jackson & Curtis,* 514 F.Supp. at 540. To require plaintiffs to allege each misrepresentation over a two-year period would require defendants to plead evidence and would produce a complaint that is not a short and plain statement of the claim. Fed.R.Civ.P. 8(a).

■ But the court will require plaintiffs to amend the complaint as set forth in the discussion of the section 17(a) claim. The section 10(b) claim in addition is especially defective because it does not attempt to distinguish the role of each defendant in the fraud, but simply alleges that "Each of the Statements set forth in greater particularity in paragraph 41 above was false when made by defendants Merrill Lynch, Anderson, and Powell, and each of them." Complaint ¶ 42. Further, while plaintiffs allege in paragraph 41 that only Merrill Lynch and Powell made misrepresentations and do not allege that Anderson said anything to them, they conclude in paragraph 42 that each of the misstatements were false when made by *Anderson* as well as Merrill Lynch and Powell. In their amended complaint, plaintiff will clarify this allegation, and clearly allege the nature of each individual defendant's role in the fraud. The third claim is dismissed with leave to amend as set forth above.

B. *Motion to Strike.*

■ Defendants also move to strike from the complaint allegations of statements made by defendants concerning the purchase of insurance policies and plaintiffs' taxable income, pursuant to Rule 12(f), Federal Rules of Civil Procedure.[14]

---

**14.** Defendants ask the court to grant the motion to strike only if it does not dismiss the third claim. Thus, the court's disposition of the motion to dismiss would seemingly obviate a ruling

on the motion to strike. But the court interprets defendants' request only as conditioning the motion to strike on a dismissal with prejudice. Because the court dismissed the third

*See* Complaint, ¶ 41(b), (c), and (d). Rule 12(f) allows the court to strike from any pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Here, the references in the complaint to insurance policies and plaintiffs' taxable income do not appear to be relevant to the claim for securities fraud under section 10(b) and Rule 10b–5. Section 10(b) and Rule 10b–5 make unlawful misrepresentations concerning the offer or sale of securities. *See* 15 U.S.C. § 78j(b). Insurance policies are not securities for purposes of the 1934 Act. *See Collins v. Baylor*, 302 F.Supp. 408 (N.D.Ill.1969). Hence, alleged misrepresentations as to the suitability of insurance policies as investments and the adequacy of income from plaintiffs' margin account do not concern the purchase or sale of securities. Similarly, statements concerning the nature of plaintiffs' income does not concern securities. These allegations are therefore irrelevant to the third claim and are subject to a motion to strike.

Plaintiffs assert in response to the motion that allegations pertaining to insurance policies assist "in presenting the court with a full picture of the manipulative and deceptive course of conduct undertaken by defendant Powell," and that the allegations pertaining to plaintiffs' income were "made 'in connection with' the management and trading in plaintiff's account by Powell and the other defendants." Plaintiffs' Opposition Memo, page 22. Neither of these arguments is persuasive. The purpose of the complaint is not to present the court with the full picture, but to allege the requirements of the pertinent offense. *See* Fed.R. Civ.P. 8(a). Unless the allegations are relevant to the elements of a claim under section 10(b), they will be stricken—the court needs no further background information.

Accordingly, the motion to strike will be granted, but with leave for plaintiffs to amend to reallege the stricken matters in line with this decision.

claim with leave to amend, the court will pro-

## IV.

Plaintiffs' fifth claim for relief alleges violations of RICO based upon securities fraud and mail and wire fraud. Although defendants contend that the plaintiffs do not indicate the precise statutory basis for their claim, plaintiffs specifically allege that the acts set forth in the fifth claim violated 18 U.S.C. sections 1962(a) and 1962(c). Complaint, ¶ 52. Section 1962(a) provides, in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). Section 1962(c) reads:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Plaintiffs apparently allege that defendants conspired to violate these subsections, see Complaint ¶ 50, which is unlawful under 18 U.S.C. § 1962(d).

Defendants move to dismiss the fifth claim on the grounds that its "conclusory" allegations are not supported by facts establishing the elements of a RICO cause of action, and that defendants formulation of the RICO claim conflicts with controlling case law. Specifically, defendants argue that the RICO claim fails because: (1) Plaintiffs' allegations of a pattern of racke-

ceed to rule on the motion to strike.

teering activity fail to meet the requirements of Rule 9(b), Federal Rules of Civil Procedure, (2) Plaintiffs inadequately allege the requisite predicate acts, and (3) Plaintiffs fail to allege a proper RICO enterprise. Defendant Merrill Lynch also seeks sanctions under Rule 11, Federal Rules of Civil Procedure because, they assert, "Plaintiff's attorney could not have believed in good faith that the facts which he alleged were adequate to state a claim for relief under RICO." Defendants' Memo, page 16.

### A. Pattern of Racketeering Activity.

RICO prohibits the use of income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce, and conduct of or participation in the conduct of an enterprise through a "pattern of racketeering activity." 18 U.S.C. § 1962. A pattern of racketeering activity "requires at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). "Racketeering activity" consists of various predicate acts enumerated in section 1961(1).[15] Plaintiffs al-

lege that "The acts of defendants as set forth above constituted a pattern of racketeering activity within the meaning of 18 U.S.C. Sections 1961(5), 1961(1)(D), 1961(1)(B), and 1341 and 1343." Complaint, ¶ 39. These cited statutes indicate that the pattern of racketeering activity alleged by plaintiffs consists of securities fraud, mail fraud, and wire fraud.[16]

Defendants' motion to dismiss, as it relates to the pattern of racketeering allegation, apparently is directly only to the level of specificity with which plaintiffs allege the predicate acts. At page 16 of their brief, defendants state that "[p]laintiffs' conclusory allegation that defendants unspecified activities constituted a pattern of racketeering under these sections fails to meet the requirements of FRCP 9(b)." Defendants argue that Rule 9(b) applies to allegations of predicate acts involving fraud, and that plaintiffs have failed to allege with the requisite particularity facts constituting the elements of mail and wire fraud.

■ The essential elements of mail fraud [17] are (1) the formation of a scheme

15. (1) "racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering

paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor funds), or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States;

16. 18 U.S.C. section 1341 sets forth the elements of mail fraud; 18 U.S.C. section 1343 sets forth the elements of wire fraud. These crimes are made predicate acts under 18 U.S.C. section 1961(1)(B). 18 U.S.C. section 1961(1)(D) defines racketeering activity to include fraud in the sale of securities. See supra, n. 15.

17. 18 U.S.C. § 1341 reads: "Whoever, having devised or intending to devise any scheme or artifice to defraud ... for the purpose of execu-

or artifice to defraud, and (2) use of the mails or causing the use of mails in furtherance of the scheme. *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). The first element requires specific intent, and this intent is shown if the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension. *Id.* at 1172. The second element is satisfied when one acts knowing the use of the mails will follow in the ordinary course of business, or where though not intended, such use is reasonably foreseeable. *Id.* at 1173. Wire fraud [18] contains the same essential elements. *Allington v. Carpenter*, 619 F.Supp. 474, 477 (C.D.Cal.1985).

■ The complaint is deficient in alleging the requisite elements of mail and wire fraud. Nowhere do plaintiffs allege that defendants intentionally formed a scheme or artifice to defraud, and to infer such an allegation from the acts pleaded stretches the complaint too far. Plaintiffs do allege that defendants acted with intent to deceive, manipulate, and defraud, but that allegation is contained in the third claim for violation of section 10(b), and the court does not believe this intent can be carried over into a mail/wire fraud allegation as well. Although intent is a state of mind that may be averred generally, Fed.R. Civ.P. 9(b), it nonetheless must be alleged. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984). Further, the only reference in the complaint to the use of mails is in paragraph 16, in which plaintiffs allege that "Defendant Powell, however, persuaded and convinced plaintiffs that defendant Powell could, and would, continue to manage and operate plaintiffs'

accounts ... by utilizing telephone and mail contact with plaintiffs, which forms of communication were the primary means of communication to that point between plaintiffs and defendant Powell in any event." In the court's opinion, this allegation fails to meet the second element of mail/wire fraud, for it does not allege that defendants used or caused the use of the mails in furtherance of a scheme. Plaintiffs must specifically allege when and how defendants used the mail or wires in furtherance of a scheme to defraud.

### B. *Predicate Acts.*

To state a claim under RICO, plaintiffs must allege that defendants engaged in at least two predicate acts of racketeering activity, defined in 18 U.S.C. section 1961(1), within a ten-year period. 18 U.S.C. § 1961(5). Defendants argue that even if plaintiffs' other claims for relief satisfy Rule 9(b), they cannot serve as predicate acts because plaintiffs do not plead the requisite intent for criminal liability.

Section 1961(1)(B) defines racketeering activity to include any act which is "indictable" under 18 U.S.C. sections 1341 and 1343 (18 U.S.C. § 1961(1)(B) and (D)). Hence, defendants contend that plaintiffs have not alleged the requisite special intent for criminal liability for mail and wire fraud. As the court pointed out above, the complaint is defective in that regard.

■ Also, defendants point out that plaintiffs have not alleged facts constituting criminal violations of the 1933 and 1934 Acts. Section 1961(1)(D) defines racketeering activity to include any "offense" involving fraud in the sale of securities "punisha-

---

ting such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined ... or imprisoned ... or both."

**18.** 18 U.S.C. Section 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000, or imprisoned not more than five years, or both.

ble" under any law of the United States. 18 U.S.C. § 1961(1)(D). This passage "obviously" refers to criminal, not civil violations of the securities laws.[19] *See The Trane Co. v. O'Connor Securities,* 718 F.2d 26, 29 (2d Cir.1983). Criminal liability under the 1933 and 1934 Acts requires "willful" violation of these acts. 15 U.S.C. §§ 77x, 78ff.

In paragraph 44 of the complaint, plaintiffs allege that defendants "acted with intent to deceive, manipulate or defraud plaintiffs" in violation of section 10(b) and Rule 10b–5. Inasmuch as intent may be averred generally, Fed.R.Civ.P. 9(b), this allegation suffices for purposes of section 1961(1)(D). The other securities claims contain no allegations of willfulness or intent, however, and so cannot serve as predicate acts for the RICO claim unless plaintiffs appropriately amend.

■ The court also does not believe pleading the predicate acts by averring them generally and incorporating the general allegations of the complaint is useful here. *See* Complaint, ¶¶ 47, 49. This practice, though keeping the complaint at minimum length, is confusing in a multi-claim complaint because it does not indicate exactly which of the incorporated allegations are germane to the subject claim. This is especially true when pleading the predicate acts constituting the RICO allegation. This court, as many others, is sensitive to the abuse of RICO and therefore will require clarity and specificity in alleging the

acts constituting the predicate acts.[20] The court then requests that plaintiffs in their amended complaint do not reallege and incorporate by reference the general allegations, but specifically set forth in the fifth claim itself those allegations, *and only those allegations,* which form the basis for the predicate acts. It is suggested that plaintiffs further delineate in the RICO claim exactly which allegations pertain to which predicate acts. In sum, plaintiffs will allege in full the facts constituting the predicate acts in the fifth claim for relief.

■ Finally, defendants contend that although plaintiffs include a claim for conspiracy under 18 U.S.C. section 1962(d), they allege none of the necessary elements of conspiracy. The Ninth Circuit, in *United States v. Tille,* 729 F.2d 615, 619 (9th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984), set forth the proof requirements for a RICO conspiracy, which are equally applicable at the pleading stage:

> Proof of an agreement the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d). It is only when proof of such an objective is lacking that the evidence must establish the defendant's participation or agreement to participate in two predicate offenses.

729 F.2d at 619. *See also United States v. Carter,* 721 F.2d 1514, 1528–32 (11th Cir.

---

**19.** But there is no requirement that a private RICO action can proceed only against a defendant who has been convicted of a predicate act, nor must the predicate acts be established beyond a reasonable doubt to recover under RICO. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

**20.** This court does not follow the view adopted in *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.,* 558 F.Supp. 1042, 1044–1047 (D.Utah 1983) that predicate acts of racketeering be alleged with enough specificity to show there is probable doubt the crimes were committed. *See also Medallion TV Enterprises v. SelecTV of California,* 627 F.Supp. 1290, 1293 n. 4 (C.D.Cal.1986); *Laterza v. American Broadcasting Co., Inc.,* 581 F.Supp. 408, 413 (S.D.N.Y. 1984); *Taylor v. Bear Stearns & Co.,* 572 F.Supp.

667, 683 (N.D.Ga.1983). This approach has been cogently criticized by the Seventh Circuit in *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 404 (7th Cir.1984), *aff'd on other grounds,* —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). *See also Schnitzer v. Oppenheimer & Co., Inc.,* 633 F.Supp. 92, 96–97 (D.Ore.1985). The court believes that specificity of pleading equating to probable cause is not necessary in a civil RICO complaint. The court does conclude, however, that a RICO plaintiff should plead the facts constituting the predicate offense with the particularity required by Rule 9(b). *Schnitzer v. Oppenheimer & Co.,* 633 F.Supp. at 96–97; *Lewis v. Sporck,* 612 F.Supp. 1316, 1324–1325 (N.D. Cal.1985).

1984). When a conspiracy is alleged under section 1962(d), the complaint need not delineate with precision the roles of the various defendants, but it must inform each defendant of what he did to join the conspiracy. *See Lewis v. Sporck,* 612 F.Supp. 1316, 1325 (N.D.Cal.1985). Moreover, this court holds that in order for a plaintiff to have a private cause of action under 18 U.S.C. section 1962(d), there must be at the very least one or more overt acts causing injury to the plaintiff or "his business or property" under 18 U.S.C. section 1964(c). This position was taken in *Medallion TV Enterprises v. SelecTV of California,* 627 F.Supp. 1290, 1297–1300 (C.D.Cal.1986), the analysis of which this court adopts. *But see United States v. Coia,* 719 F.2d 1120, 1124 (11th Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984) (criminal RICO conspiracy requires no overt act).

The pertinent allegations of the complaint, paragraphs 50–51, fail to satisfy these requirements. Plaintiffs fail to allege the existence of an agreement and at least one overt act causing injury to plaintiffs. The unlawful object allegation, though in the correct form, is defective because the pleaded enterprises are legally inadequate. *See, infra,* at 671–673. Thus, plaintiffs' claim under section 1962(d) must be dismissed with leave to amend.

#### C. *Enterprise.*

A necessary allegation for a RICO claim is the existence of an "enterprise" which defendant acquired or operated by income received through a pattern of racketeering activity, 18 U.S.C. § 1962(a), or which defendant conducted through a pattern of racketeering activity. 18 U.S.C. § 1962(c). An "enterprise" includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In paragraph 48 of the complaint, plaintiffs allege that

48. Defendant Merrill Lynch is an 'enterprise' as defined by ... 18 U.S.C. Section 1961(4), and at all material times mentioned herein such enterprise has affected and does affect, interstate commerce. Defendant Paine Webber is a separate 'enterprise' within the meaning of that statute. ...

Complaint ¶ 48.

Defendants argue that this is a defective allegation of enterprise because a RICO defendant cannot also serve as the RICO enterprise. That proposition is correct; in *Rae v. Union Bank,* 725 F.2d 478, 480 (9th Cir.1984), the Ninth Circuit held that "[i]f [defendant] is the enterprise, it cannot also be the RICO defendant." *See also United States v. Benny,* 786 F.2d 1410, 1415 (9th Cir.1986); *Haroco v. American National Bank,* 747 F.2d 384, 399–400 (7th Cir.1984), *aff'd on other grounds,* — U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *United States v. Computer Sciences,* 689 F.2d 1181, 1190 (4th Cir. 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

Plaintiffs respond by arguing, first of all, that *Rae* applies only to claims brought under section 1962(c), and does not apply to claims brought under 1962(a). Because the complaint is grounded on both subsections, the enterprise allegation is sufficient at least as to the section 1962(a) claim.

Although there is district court authority applying the principle of *Rae* to claims under section 1962(a) as well as section 1962(c), see *Lopez v. Dean Witter Reynolds, Inc.,* 591 F.Supp. 581, 585–586 (N.D. Cal.1984); *Willamette Savings & Loan v. Blake & Neal Finance Co.,* 577 F.Supp. 1415, 1426–1427 (D.Ore.1984), the Ninth Circuit has never so held. *See United States v. Benny,* 786 F.2d at 1410 (Defendant charged under 1962(c) only); *Rae v. Union Bank,* 725 F.2d at 478 ("The portion of the RICO statute applicable here is ... 1962(c)"). This court believes the better reasoned view is that an enterprise may also be the defendant under section 1962(a) and therefore adopts that position.

The court in *Rae* did not explain the reasoning for its decision, but the basis for holding that a RICO defendant cannot also

be a RICO enterprise is the language of section 1962(c), which requires that the liable person be employed by or associated with the enterprise. In *Haroco v. American National Bank*, 747 F.2d at 384, the Seventh Circuit reasoned:

> We do not doubt that a corporation may satisfy the section 1961 definitions of both 'person' and 'enterprise,' .... But we focus our attention on the language in section 1962(c) requiring that the liable person be 'employed by or associated with any enterprise' which affects interstate or foreign commerce. The use of the terms 'employed by' and 'associated with' appears to contemplate a person distinct from enterprise. If Congress had meant to permit the same entity to be the liable person and the enterprise under section 1962(c), it would have required only a simple change in language to make that intention crystal clear.

747 F.2d at 400. The Ninth Circuit recently adopted this explanation as the "best rationale," and stated that *"Rae v. Union Bank* ... hold[s] that a corporate defendant cannot be employed by itself or associate with itself." *United States v. Benny*, 786 F.2d at 1415–1416.

Interpreting *Rae* in this manner easily yields the conclusion that its holding does not apply to claims brought under section 1962(a). The language in section 1962(a) does not require a relationship between the person and the enterprise as does section 1962(c), and so it does not require the involvement of two separate entities. While it would be incongruous to find that a corporation can be employed by or associated with itself, it would not be so ridiculous to prohibit the corporate defendant, the "person," from using illgotten gain in the corporation, the "enterprise." *See Schofield v. First Community Corp. of Boston*, 793 F.2d 28, 31 (1st Cir.1986). This approach to the two subsections

> [T]hus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeer-

ing. This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.

*Haroco v. American National Bank*, 747 F.2d at 402. In *Schofield v. First Community Corp. of Boston*, 793 F.2d at 32, the court approved this interpretation in *dicta*, stating that "[b]ecause a narrow reading of section 1962(a) also would insulate much criminal activity, and because the language permits a broader reading, that section must be read to allow corporations to serve both as the RICO Person and the RICO enterprise."

Accordingly, plaintiffs' enterprise allegation is sufficient for their section 1962(a) claim. In regard to the section 1962(c) claim, plaintiffs argue:

> [T]he complaint specifically alleges an association in fact between the corporate defendants and each of the individual defendants employed by the corporations, and thus has alleged sufficient association between the defendants to meet the 'enterprise' requirement of § 1962(c). Although the association is not specifically denominated as an 'enterprise' apart from the corporate defendants, the pleading is sufficiently definite to avoid a motion to dismiss, and, alternatively, can be easily cured by amendment. In any event, the motion to dismiss should be either denied outright or granted leave to amend.

Plaintiffs' Opposition Memo, page 34–35. The court does not believe that the pleading is sufficiently definite to avoid a motion to dismiss, so the remaining issue is whether plaintiffs can, as they claim, cure the defect by amendment.

Plaintiffs seek to allege that the RICO enterprise in this case consisted of an association in fact between Merrill Lynch and Paine Webber, respectively, and the individual defendants employed by each corporation. At first blush, the definition of "enterprise" under the RICO statute would not include an association consisting of a

corporation and individuals. *See* 18 U.S.C. § 1961(4). But that section is not an exclusive list; it merely lists entities which are included in the RICO definition of "enterprise." *United States v. Huber*, 603 F.2d 387, 394 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Section 1961(4) is illustrative, not exhaustive, and where the enterprise is commercial, courts have consistently construed "enterprise" broadly. *Id. See also Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1285 (7th Cir. 1983) (enterprise includes the entities listed in section 1961(4) or any combination of them).

 Plaintiffs' theory of enterprise was approved in *Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 609 F.Supp. 1055 (D.Md.1985), a factually similar case. There, the court stated:

Defendants contend, however, that plaintiffs have failed to describe an 'enterprise' separate and apart from Merrill Lynch. Plaintiffs assert that they have sufficiently alleged that the defendants, Poston, Beckwith, and Merrill Lynch, have formed an 'enterprise' by associating to offer and sell securities to plaintiffs.

. . . . .

While plaintiffs concede that Merrill Lynch itself cannot be an 'enterprise,' they allege that there was an association in fact between Merrill Lynch and either Beckwith (count IX), Poston (counts XIX and XX), or both Beckwith and Poston (count X). The court is of the opinion that plaintiffs' allegation that these defendants associated to offer and sell securities properly alleges an 'enterprise' under RICO.

*Id.* at 1064–1065. (citations omitted). In light of the broad reading to be given section 1961(4), this court is of the same opinion, and will grant plaintiffs leave to amend the complaint.[21]

D. *Sanctions.*

██ Defendants move for sanctions under Rule 11, Federal Rules of Civil Procedure on the ground that plaintiffs' attorney could not have had a good ground to believe that the RICO claim was warranted at the time he signed the complaint. Defendants' sanctions motion is most vehemently directed to plaintiffs' allegation of enterprise, which they assert, was clearly deficient under *Rae v. Union Bank* when the complaint was filed.

The court denied defendants' request for sanctions above, and affirms that decision with regard to the RICO claim. The defects in the RICO claim might be cured by amendment, and the enterprise theory proposed by plaintiffs has found approval in at least one reported decision. *See Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 609 F.Supp. at 1055. The court is cognizant of the *in terrorem* power of RICO and the flurry of meritless RICO claims, but at this stage in the proceedings does not find plaintiffs' claim so patently meritless as to warrant sanctions. Further, the court is also aware of the use of Rule 11 for mere harassment, a practice

21. The court has reservations about the viability of plaintiffs' enterprise theory, however, and emphasizes that the proposed RICO enterprise allegation is sufficient only at the pleading stage of the litigation. This court follows the view expressed in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) that for a RICO plaintiff to recover, he must prove 1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; 2) that the members of the enterprise function as a continuing unit with established duties; and 3) that the enterprise must be separate and apart from the pattern of activity in which it engages. *Id.* at 789–790. *See also United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Riccobene*, 709 F.2d 214 (3d Cir.), *cert. denied sub nom., Ciancaglini v. United States*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). Although these three attributes need not be pleaded in order to state a cause of action, they eventually must be proved. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d at 790. Plaintiffs are admonished to continue their RICO claim only if they in good faith believe that through discovery they can establish fully each of the three requirements necessary to make their enterprise allegation succeed.

which dulls the spirited advocacy that is the lifeblood of federal litigation. Although such free-wheeling Rule 11 practice may be standard in other federal districts of this state, it is not approved by this court.

### V.

The court concludes that because the Ninth Circuit recognizes an implied private right of action under section 17(a), the motion to dismiss is denied as to the fourth claim for relief. Plaintiffs will be required, however, to amend that claim as explained above. The court will dismiss the first and second claims because it concludes that no private remedy exists under section 15(c), and because the complaint as it now stands does not state a claim for rescission under section 29(b). But plaintiffs may appropriately amend the complaint to allege a cause of action under section 29(b). The court also dismisses the third cause of action, arising under section 10(b), with leave for plaintiffs to reallege the claim with the requisite particularity. For the reasons stated above, the court will grant the motion to dismiss the RICO claim with leave for plaintiffs to correct the deficiencies in that claim.

### ORDER

Defendants' petition to compel arbitration is GRANTED as to the pendent state claims, but DENIED as to the federal claims. The court orders a stay of proceedings in the state claims pending arbitration of those claims. Defendants' motion to stay the non-arbitrable claims is DENIED. Defendant Merrill Lynch's motion for sanctions under Rule 11 is also DENIED.

Defendants' motion to dismiss is GRANTED in part and DENIED in part as set forth in the memorandum of decision. Defendant Merrill Lynch's motion for sanctions under Rule 11 is DENIED. Plaintiffs shall have thirty (30) days from the date of this order in which to file an amended complaint in accordance with the analysis of the court's decision.

IT IS SO ORDERED.